**LAMBERT v. YELLOWLEY, Acting Federal Prohibition Director, et al.**

(District Court, S. D. New York. May 8, 1923.)

1. **Intoxicating liquors** ⊙=17—**Constitutional amendment not intended to stop use for medicinal purposes.**

   Const. Amend. 18, was designed to bring about prohibition of intoxicating liquor for beverage purposes, and not to put an end to its use for medicinal purposes.

2. **Intoxicating liquors** ⊙=17—**Limitation of use for medicinal purposes held void; "necessary."**

   It being admitted, by motion to dismiss suit, intoxicating liquor is a valuable therapeutic agent in treatment of certain known diseases, and that in some cases it is "necessary" that more than a pint be administered in 10 days, so much of National Prohibition Act, tit. 2, § 7, and Act Nov. 23, 1921, as prohibits physicians from prescribing more than such amount within 10 days is void, as "necessary" at least includes that which is desirable, advisable, and needful, if not indispensable.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

In Equity. Suit by Samuel W. Lambert against Edward C. Yellowley, as Acting Federal Prohibition Director, and others. On motion by defendants after answer to dismiss the complaint. Motion denied, and injunction pendente lite granted.

Davies, Auerbach & Cornell, of New York City (Joseph S. Auerbach and Martin A. Schenck, both of New York City, of counsel), for complainant.

William Hayward, U. S. Atty., of New York City (John Holley Clark, Jr., Asst. U. S. Atty., of New York City, of counsel), for defendants.

KNOX, District Judge. Complainant, a duly licensed physician under the laws of this state, is here engaged in active practice. He alleges it to be an essential part of his professional right and duty towards his patients to treat their diseases and promote their physical well-being according to his best skill and judgment, and, to that end, to advise the use of such medicine and medical treatment as in his opinion are best calculated to effect their cure and establish their health. Based upon his experience, observation, and study of medical science, complainant believes that the use as medicine of spirituous liquors, to be taken internally, is, in certain cases, necessary for the proper treatment of patients, in order to afford relief from known ailments. Such spirituous liquors contain more than one-half of 1 per cent. of alcohol by volume and include brandy, whisky, and wine.

Plaintiff now has under observation and subject to his professional advice certain patients whose ailments require that they should, for proper relief, use internally more than one pint of spirituous liquor in 10 days, and that in certain cases it is necessary for proper medical treatment that the patient should use internally some spirituous liquor without delay, notwithstanding that, within a preceding period of less than 10 days the patient may have received and used more than one

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pint of such liquor. Complainant, conceiving it to be his duty so to do, intends, unless restrained by lawful authority, to issue prescriptions in such cases according to his best skill and judgment.

Complainant has not prescribed, and does not intend to prescribe, the use of liquor for beverage purposes, nor does he intend to prescribe the use of liquor as medicine, unless, after careful physical examination, he in good faith believes that the use of liquor as medicine is necessary for the patient and will afford him relief from some known ailment. In practicing his profession, as above outlined, Dr. Lambert finds himself confronted with certain provisions of the National Prohibition Act (41 Stat. 305) and its amendment, as follows:

Section 7 of title 2 of the act reads:

"No one but a physician holding a permit to prescribe liquor shall issue any prescription for liquor. And no physician shall prescribe liquor unless after careful physical examination of the person for whose use such prescription is sought, or if such examination is found impracticable, then upon the best information obtainable, he in good faith believes that the use of such liquor as a medicine by such person is necessary and will afford relief to him from some known ailment. Not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days."

Similar provision relating to vinous and spirituous liquor is contained in the Act of November 23, 1921, entitled "An act supplemental to the National Prohibition Act." 42 Stat. 222. Both the original Act and its supplement make a violation of any of their provisions a crime, subjecting the offender to fine or imprisonment or both.

The bill goes on to allege that neither of the enactments purports to regulate the use for beverage purposes of spirituous liquors lawfully possessed, nor do they prohibit the giving of advice by any person in respect to such use or the quantities to be used. Neither do they purport to regulate the use of lawfully possessed spirituous liquors for medicinal purposes otherwise than under physicians' prescriptions, nor to regulate the giving of advice in regard to such use, except in the case of physicians' prescriptions. It is claimed that the limitations thus attempted to be imposed upon physicians are beyond the authority conferred upon Congress by the Eighteenth Amendment to the Constitution and are void and of no effect.

All this is followed by an allegation that defendants have claimed and publicly stated that they will prevent, and have threatened by legal proceedings charging complainant with crime and attempting to subject him to fine and imprisonment to prevent, him from prescribing for use as medicine to be taken internally by any patient within any period of 10 days more than one pint of spirituous liquor, even though in his best judgment and after careful physical examination of the patient, such use is necessary to afford relief from some known ailment. Such proceedings, it is said, would seriously interfere with complainant's ability to practice his profession, and would subject him to irreparable damage, for which there is no adequate legal remedy. The matters complained of are asserted to be of common concern to many patients and many physicians, a number of whom have formed an organization, called the Association for the Protection of Constitution-

291 F.—41

al Rights, and by resolution have declared in favor of this suit. In consideration of the foregoing, the court is asked to declare unconstitutional so much of the aforementioned acts of Congress as to which complaint is made.

The answer sets up that the matter here in controversy does not exceed in value the sum of $3,000, exclusive of interest and costs, and denies that there is any duty upon a physician to prescribe medicine contrary to law; alleges that a large number of physicians deny the therapeutic value of spirituous liquors, and that prescriptions of more than one pint of such liquors within 10 days in any case is not considered necessary by a large number of reputable physicians. In view of the motion to dismiss, which admits the well-pleaded allegations of the complaint, the answer upon the issuable facts need not be considered.

Whether or not the use of liquor in the treatment of certain known ailments is a valuable therapeutic agent is a controversial subject, with which the court is not, at present, particularly concerned. That the subject is highly controversial is indicated by the results of a questionaire directed to upwards of 30,000 physicians. Of this number, 51 per cent. declare whisky to be necessary in the treatment of certain diseases, and 49 per cent. take a contrary view. For the purposes of this motion, it is sufficient to accept the allegations of the complaint, and to consider that Congress itself, in the very legislation under attack, has recognized that in certain cases liquor has a legitimate medicinal use, and has specified the circumstances under which it may be prescribed in given instances. The difficulty is that, having done so, Congress, without reference to the quantity of liquor actually required for the proper treatment of a particular ailment from which a patient may be suffering, and irrespective of the good faith, judgment, and skill of the physician in attendance, proceeds to limit the amount to be prescribed to not more than a pint within a period of 10 days.

In passing upon the propriety of such limitation, it is necessary to bear in mind the grant of power under which the National Prohibition Law and its amendments were enacted, and also to inquire "whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat. Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184; Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260.

[1, 2] The Eighteenth Amendment to the Constitution was designed to bring about the prohibition of intoxicating liquor "for beverage purposes," and was not, I think, intended to put an end to the use of liquor for purposes regarded by those who proposed the amendment, and by many of the states that ratified it, as justifiable and proper. This view was, in part, at least, entertained by Congress in enacting the Volstead Law, which permits the sale and use of sacramental wines; the use, in bona fide hospitals or sanatariums of such quantity of liquor, as may properly be administered under the direction of a duly qualified physician employed therein, to a person suffering from alcoholism; and the use of industrial alcohol under certain restrictions in arts and sciences.

So far as the sacramental use of wine is concerned, there is no specified limitation of the quantity that may be purchased and consumed. Instead of manifesting the same solicitude for the physical well-being of a person suffering from a disease (other than alcoholism), the proper treatment of which demands more than a pint of liquor within 10 days, that is evinced for the spiritual comfort and welfare of members of certain religious sects, Congress restricted in the manner complained of the medicinal use of intoxicating liquor.

If, as the complaint alleges, the administration to a patient of more than the statutory quantity of liquor is *necessary* for his relief from a certain known ailment, the inability of such patient to have his legitimate needs supplied means that he is subjected to a prohibition that certainly is not within the terms of the Eighteenth Amendment, and which easily may be imagined, might subject him to serious consequences, if not death itself. While the exercise of regulatory power in the interest of the public at large frequently brings about individual hardship, it is to be recalled that one of its chief objects is to preserve health—and is not to jeopardize and destroy it. For this reason, I feel that persons are not to be deprived of the use, when required, of such medicines as are proper and necessary for their relief, unless authority for such deprivation has expressly been conferred.

All of us recognize that the unregulated use of morphine, cocaine, and other habit-forming drugs may have most baneful effects; but who would say, they should not, in a proper case, be prescribed by a competent physician? Of course, the assertion can and probably will be made that the possibilities to which I have referred are a far call from the probability that any such result would be brought about through the absence of liquor from the treatment of any known ailment. It is, however, to be remembered that the admitted allegations of the complaint are that the use of more than a pint of liquor within 10 days is necessary for the treatment of certain known ailments; the statute admits that the use of liquor may sometimes be necessary, and "necessary," while it may mean something less than indispensable, at least, includes that which is desirable, advisable and needful.

If this be true, it would seem not to be a function of the Congress, particularly under the amendment, to invade, as it were, the domain of medical authority, and to deprive patients of that which they need, and, by every principle of right and justice, are entitled to have. Having assumed so to do, it would appear that the action does not constitute legislation appropriate to the object sought to be attained through the adoption of the amendment. To me it seems reasonably clear that the right of the public to have available for its use, when required in the proper treatment of disease, an adequate supply of a valuable therapeutic agent, transcends the present power of Congress to decree otherwise upon the basis of expediency or policy.

Under the facts presented by the complaint, the danger that persons bent upon a violation of the Volstead law may, through the medicinal use of liquor, be furnished with a means of procuring intoxicants for beverage purposes, is to be overcome through regulations. These may be of the most stringent character, but they must, in my opinion, fall

short of an actual prohibition against the use of liquor to the extent demanded by the reasonable necessities of the proper treatment of known ailments.

So far as I am informed, the legislation complained of does not purport to be based upon any finding as to the quantity of liquor that reasonably and properly may be required within a specified period for the treatment of disease. If otherwise, I should be inclined to dismiss the bill; it being my impression that within reasonable limits the quantity to be prescribed may be regulated by Congress. But, accepting the complaint as made, the limitation now imposed seems to be arbitrary and without justification. Should the proof show the contrary to be the fact, the complainant of course cannot prevail.

As bearing upon what was sought to be accomplished through the instrumentality of the Eighteenth Amendment, I quote from the report of the Senate judiciary committee, dated June 11, 1917, in which the adoption of a concurrent resolution submitting the amendment to the states was recommended. The committee, in setting forth some of the arguments advanced by proponents of the measure, reported the following:

"National law, enacted under an amended Constitution, could prohibit transportation and sale, and in concurrence with like legislation by the states (the union of the power of the nation and the power of the states), thus securing the entire strength of the whole community, could soon put an end to the traffic. Under such restriction in a generation or two the consumption of alcohol as a beverage would practically disappear. Alcohol would still be manufactured, distributed, and sold under the restrictions appertaining to other poisons, and its *use as a medicine* (italics mine) and in the arts would not be interfered with. Its manufacture and distribution would be controlled by like regulations as those made with reference to dynamite, nitroglycerine, and gunpowder, and the whole family of poisons, and in fact, all articles of great and dangerous potency which, nevertheless, have *their legitimate uses for the benefit of mankind.*"

I have little or no doubt that it was the impelling force and reasonableness of the thought expressed by the foregoing quotation that brought about the submission of the amendment to the several states, and was responsible for its ratification by 45 of them.

Again, it is interesting in this connection to glance at the prohibition laws of some of the states, and to see how they regard the medicinal use of liquor or of alcohol. In Kentucky the Court of Appeals speaking in the case of Sarrls v. Commonwealth, 83 Ky. 327, said:

" * * * While the Legislature has the power to regulate the sale of liquors to be used as a beverage, or to prohibit its sale for that purpose altogether, it cannot exercise that power so arbitrarily as to prohibit the use or sale of it as medicine."

And again:

" * * * The power of the legislature to prohibit the prescription and sale of liquors to be used as medicines does not exist, and its exercise would be as purely arbitrary as the prohibition of its sale and use for religious purposes."

Missouri ratified the amendment upon January 16, 1919, and in the enforcement of the law, which took effect upon the date that the amend-

ment became operative (Laws Mo. 1919, p. 408) permitted the prescriptions by physicians of either alcohol or wine for medicinal purposes. The amount to be thus prescribed was not arbitrarily fixed. As late as March 28, 1921 (Laws 1921, p. 413), the Legislature of that state amended the law so as to permit the prescription of intoxicating liquor other than that specified in the act of January 16, 1918.

The state of Nevada, in a prohibition statute, enacted pursuant to a vote of her people, upon November 5, 1919, gave permission to physicians to prescribe pure grain alcohol for medicinal purposes, and imposed no arbitrary limitation upon the quantity that might be used. A somewhat similar statute is in force in New Mexico.

The Constitution of Michigan (section 11, art. 16) makes provision for the prohibition of the liquor traffic, except for medicinal, mechanical, chemical, scientific, or sacramental purposes, and directs that legislation provide for regulations upon the sale of intoxicants. I find no artificial limitation upon the quantity that physicians may prescribe for medicinal use. For a construction of the state statute, see People v. Urcavitch, 210 Mich. 431, 178 N. W. 224.

For years a law of Indiana made unlawful the retailing of spirituous liquor without license, and contained no exception in favor of a sale for medicinal purposes. By a long line of decisions it has been held that a bona fide sale for such purposes was not within the statute. See Donnell v. State, 2 Ind. 658; State v. Shotts, 15 Ind. 449; Nixon v. State, 76 Ind. 524. The present law, I am informed, provides only that it shall be unlawful for any licensed physician to issue a prescription for intoxicating liquor except in writing, or in any case, unless he has good reason to believe that the person for whom it is issued will use the same for medicinal or surgical purposes or as an antiseptic.

Alabama prohibits the sale of intoxicants for medical purposes, save upon prescription of a reguarly authorized physician.

In Florida, alcohol may be prescribed and used for medicinal purposes, and so in Mississippi, South Carolina, Georgia, Arkansas, Delaware, Oklahoma, Oregon, Tennessee, and Texas.

In North Carolina, grain alcohol may be sold for medicinal purposes, and it may be prescribed under certain conditions in Washington. In South Dakota spirituous and vinous liquors may be prescribed. The statute of Kansas excepts from its operations the medicinal use of intoxicating liquors. Colorado and Minnesota regulate the quantity of liquor that may be prescribed upon one prescription, but they do not declare the amount that a patient shall use within a specified time.

Utah prohibits the prescription of any compound containing more than one-half of 1 per cent. of alcohol by volume and which is capable of being used as a beverage, and it is possible that a few other states have laws as drastic. I think, however, that it is fair to say that as a whole the ratifying states did not mean to dispense with the adequate use in a given case of such amount of specified intoxicants as were believed to possess therapeutic value.

It is, however, argued that, irrespective of all that has been said, the cases of Purity Extract Co. v. Lynch and Ruppert v. Caffey, supra, make it necessary to dismiss the complaint. I freely admit those deci-

sions give me pause. Nevertheless, it is to be remembered that the results in those cases were in no small measure based upon the legislative and judicial history of many of the states in dealing with local prohibition statutes. Under such a course of reasoning, I feel that much support is to be found for complainant's contention in the preceding summary of legislation within the states, where prohibition has been recognized for many years, to be a proper and desirable policy. The regard which they manifested for the preservation of the right of the public to resort to the medicinal use of intoxicating liquors in the treatment of known ailments is not without influence in placing a construction upon legislation enacted pursuant to the limited authority of the Eighteenth Amendment.

From the foregoing I have reached the conclusion that the limitations of the Volstead Act and its amendments, which make it lawful to prescribe but one pint of intoxicating liquor for the internal and medicinal use of a person whose known ailment, if it is properly to be treated, requires the administration of a greater quantity, are void.

An injunction pendente lite may issue against the defendants.