**PRICE v. RUSSELL, Federal Prohibition Director, et al.**

(District Court, N. D. Ohio, W. D.    February 5, 1924.)

No. 430.

**Intoxicating liquors ⊜⟶17—Limitation of quantity of liquor which physician may prescribe held constitutional and valid.**

The provisions of National Prohibition Act, tit. 2, § 7 (Comp. St. Ann. Supp. 1923, § 10138½cc), and amending Act Nov. 23, 1921, § 2 (Comp. St. Ann. Supp. 1923, § 10138½ccc), limiting the quantity of liquor to be taken internally that may be prescribed by a physician for the same person within a period of 10 days, apply only to "beverage" liquor, and as so limited are within the police powers conferred on Congress by the Eighteenth Amendment, and valid.

In Equity.    Suit by Henry L. Price against J. E. Russell, Federal Prohibition Director for the State of Ohio, and others.    Decree for defendants.

Chas. R. Barefoot, of Toledo, Ohio, for plaintiff.

Hon. A. E. Bernsteen, U. S. Dist. Atty., of Cleveland, Ohio, and George E. Reed, Asst. U. S. Dist. Atty., of Toledo, Ohio, for defendants.

KILLITS, District Judge.    The complainant, asserting that he is a physician regularly admitted to practice and practicing for a long time within the state of Ohio and pursuant to its laws, and alleging a course of conduct, past, present, and prospective, conformable to law, and that he has a duty in his profession to advise medicines and to apply medical treatment which, in his opinion, may be calculated to meet the requirements of his respective patients, and further his belief, based upon experienced observation and instruction, that the use of intoxicating liquors, to be taken internally, is, in certain cases, necessary for the proper treatment of patients, seeks the order of this court to restrain the defendants, who are severally officers of the United States government, specifically charged by law with the enforcement of the act known as the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), from applying to him the limitations of section 7, title 2 (section 10138½cc), thereof.    Substantially the facts are identical with those of the case of Lambert v. Yellowley, 291 Fed. 640, and the relief sought is the same as therein granted by action of the District Court for the Southern District of New York.    The same question was considered also by the District Court of Montana in United States v. Freund, 290 Fed. 411.    If these cases are rightfully decided, the same conclusions should be reached here.

Concretely, the question is this:    Has Congress, legislating under the Eighteenth Amendment, the power to limit the amount of intoxicating liquor or the alcoholic content thereof which a physician in good faith in the regular exercise of his profession deems necessary for a patient's internal use?    The language of section 7, title 2, of the National Prohibition Act attacked is that:

"Not more than a pint of spirituous liquor to be taken internally shall be prescribed for use by the same person within any period of ten days."

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The amendment of November 23, 1921, supplementing the National Prohibition Act, provides, in section 2 (Comp. St. Ann. Supp. 1923, § 10138½ccc), that in the aggregate not more than one-half pint of alcohol, as the alcoholic content of spirituous or vinous liquors, intended for internal administration, shall be prescribed for use by any patient within a period of 10 days. The cases above referred to coincide in the conclusion that these limitations are unreasonable, and not a proper exercise of the authority to legislate given by the Eighteenth Amendment, and the decisions run upon the principle, among others, that because the amendment, by necessary implication, recognizes the possibility of a proper place for intoxicating liquors in medical treatment, the administration thereof cannot be limited; i. e., that the judgment of a reputable physician, arrived at in good faith, as to the necessities of his patient, is controlling. This is the position taken in the voluminous brief of the complainant herein.

It would expand this opinion to an inordinate length if we should discuss or cite the many cases, state and national, upon which the parties hereto respectively rely, for the defense has also advised the court by a brief even more elaborate and comprehensive and extended than that of the complainant. It is sufficient to outline a few of the fundamental principles which this court deems settled, with such controlling citations of authority as we may select when citation seems to be indicated.

The purpose and effect of the Eighteenth Amendment are well understood and considered. They are to put an end to the traffic in intoxicating liquors for beverage purposes. No argument is needed to the conclusion that an incidental result is to clothe Congress with a police power which theretofore was exercisable only by the several states. Inherent in the enjoyment of such a power is the authority of Congress to legislate effectively, to make successfully operative the amendment, and that in so doing the legislation may prohibit acts otherwise and theoretically innocuous. We need not go behind the decisions in Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, and Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260, for authority to this proposition. The decisions of the state courts, considering the powers conferred by state Constitutions, are substantially unanimous to this point. Congress, having been clothed with a particular police power, obviously should have the same complete scope for its exercise which state Legislatures enjoy under the same circumstances, and which, it has been decided by state courts and by the Supreme Court of the United States, reconsidering state decisions, was in fact the field of state legislation. National Prohibition Cases, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946. Any argument that there is any distinction in character between the power possessed by Congress over the subject of intoxicating liquor, in the exercise of its new police power and that possessed by the states is fundamentally unsound. It of necessity, and this is the purport of all the consideration of the highest courts, is a power of such breadth and comprehensiveness as to include in its legitimate application the control and regulation of all means by which the evil sought by it to be controlled may have operation. McCul-

loch v. Maryland, 4 Wheat. 316, 420, 4 L. Ed. 579; Rose v. United States (C. C. A.) 274 Fed. 245.

The second section of the Eighteenth Amendment says that Congress and the several states shall have concurrent power to enforce the article by "appropriate" legislation. Of necessity, this means that the legislation may be as comprehensive when enacted by Congress as if enacted by states, and clearly appropriate legislation is that which will work to a complete and effective repression of what the amendment treats as a public evil. Among other cases, the latest are noted. Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946; Corneli v. Moore, 257 U. S. 493, 42 Sup. Ct. 176, 66 L. Ed. 332; Grogan v. Walker, 259 U. S. 80, 42 Sup. Ct. 423, 66 L. Ed. 836, 22 A. L. R. 1116.

Because legislative acts are presumed to be constitutional, it follows that Congress should be permitted to enjoy exclusively the right to judge the means to effect a constitutional purpose and the necessity which calls forth the employment of such means, and that its judgment must stand, unless we are able to see, too clearly to be subject to reasonable criticism, that its action is improvident and beyond legislative limitations. Interstate Railway v. Massachusetts, 207 U. S. 79, 28 Sup. Ct. 26, 52 L. Ed. 111, 12 Ann. Cas. 555; Hamilton v. Kentucky Distilleries, 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Williams v. Arkansas, 217 U. S. 79, 30 Sup. Ct. 493, 54 L. Ed. 673, 18 Ann. Cas. 865. That the right to practice medicine is subordinate to the police power is settled by the decisions of the Supreme Court. See Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623; Gray v. Connecticut, 159 U. S. 74, 15 Sup. Ct. 985, 40 L. Ed. 80; Watson v. Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987. Many other decisions, including those of the highest state courts, go to this same point in varying phases.

With these fundamental propositions in mind, it remains to consider whether the limitations referred to are so clearly unreasonable as to have been beyond the power of legislative enactment. In his consideration of the question, Judge Bourquin in the Montana case—(D. C.) 290 Fed. 411—cites no authority whatever. He finds that the legislation "is an extravagant and unreasonable attempt to subordinate the judgment of the attending physician to that of Congress, in respect to matters with which the former alone is competent to deal. * * * The physician, with power to begin a course of treatment, must have like power to finish it. His judgment to begin must be unrestricted to conduct and finish. Otherwise may be dangers greater than involved by denial of any power, for the latter might be compensated by substitutes." The court concludes that the provisions in question restrain the judgment of physicians without "due process of law, within the meaning of the Fifth Amendment, and are unconstitutional."

Judge Knox in a more elaborate opinion—(D. C.) 291 Fed. 640)— although discussing many state authorities and statutes which he deems to have analogous application to the question, treats the subject as a case of first instance, confessing that the decisions in Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184, and Ruppert

v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260, have the effect to leave him somewhat hesitant in the conclusion to which he comes, which is in consonance with that later by Judge Bourquin, that the limitation is void.

Considering with great respect the reasoning of these courts of equal jurisdiction with this, we feel that the fullest consideration of the subject has not been given. Neither court seems to have noted the significance of the fact that the statute deals only with the distribution and use of intoxicating beverages, not with intoxicating liquors generally. This must be so from the very nature of the power to enact it granted by the amendment which prohibits only the manufacturing and transporting of, and the trafficking in, beverage intoxicating liquor. The police power thus conferred upon the general government is limited to those enactments, and administrations thereunder, which have a reasonable relation to the successful enforcement of the constitutional provision. Very carefully this limitation is expressed in the legislation. Section 1 of title 2 of the act (section 10138½) says that, when the word "liquor" or the phrase "intoxicating liquors" is used in the law, the construction shall apply to alcohol, brandy, and other named beverages, and to liquors, liquids, and compounds having an alcoholic content of more than one-half of 1 per cent. by volume "which are fit for beverage purposes." Section 4 of title 2 of the act (section 10138½b) exempts from the provisions of the legislation nonbeverage intoxicants. The supplemental act, at the close of the first paragraph of section 2, says:

"But this provision shall not be construed to limit the sale of any article the manufacture of which is authorized under section 4, title 2, of the National Prohibition Act."

The effect of these definitions and exceptions requires that the attacked provision of section 7 of title 2 be read to limit the prescription of not more than one pint of *beverage* spirituous liquor within ten days, and that the vinous or spirituous liquor of section 2 of the supplemental act of 1921 be construed as that which, in the state prescribed or administered, is fit for beverage purposes. By section 1, title 2, the words "liquor" and "intoxicating liquor," where used, may mean pure alcohol, as distinct from those intoxicating liquors listed, such as brandy, whisky, vinous, gin, wine, and malt and other alcoholic compounds of beverage use. There is thus a distinction apparent in the listing, and this seems to have a significance when we regard the language of the attacked parts of the law. If the construction of section 7 had uniformly used the comprehensive terms found in section 1, as "liquor" or "intoxicating liquors," the difficulty would be solved, but there is a change in the verbiage of the two provisions of this section. We quote the first three sentences of the section, with our own italics:

"No one but a physician holding a permit to prescribe *liquor* shall issue any prescription for *liquor*. And no physician shall prescribe *liquor* unless after careful physical examination of the person for whose use such prescription is sought, or if such examination is found impracticable, then upon the best information obtainable, he in good faith believes that the use of such *liquor* as a medicine by such person is necessary and will afford relief to him from some known ailment. Not more than a pint of *spirituous liquor* to be taken internally shall be prescribed for use by the same person within any period of ten days and no prescription shall be filled more than once."

By the use of the word "liquor," alcohol as such is undoubtedly included, because of the definition of section 1. A physician must have a permit to prescribe it as well as other intoxicants. But when the law comes to fixing the limit of quantity in a fixed time, that limit is placed upon "spirituous" liquor. Later in the section, where a physician is enjoined to keep a record of prescriptions, again the unmodified term "liquor" is used. Whether pure alcohol is included in the term "spirituous liquor" is a matter of construction of the statute under consideration. Marks v. State, 159 Ala. 71, 48 South. 864, 133 Am. St. Rep. 20.

Of course, we must assume that words in a statute are used significantly, and that effect must be given to the language as the Legislature framed it. Applying this principle, it would seem that Congress did not intend to make the words "spirituous liquor" capable of including pure alcohol. This being diluted, however, to the point of palatability, would naturally come under the denomination of a spirituous liquor. It cannot be doubted that the effect of section 7 is to confer what amounts to a privilege to prescribe beverage spirituous liquor in a limited amount. With this in mind, we have for construction the supplemental act of 1921. Does it modify section 7, so that alcohol is included in the limitation of section 7? The purpose of the supplemental act is well understood. It was to clarify, by enlarging in one direction and narrowing in another, the original act, the principal object being to denounce malt liquors as the subjects of prescription, and in the process vinous liquors were made possible to be prescribed. At all times, as we have said, it would seem that Congress is dealing with prescriptions for liquors having beverage possibilities. The limitation of one-half of a pint of alcohol in a 10-day prescription undoubtedly refers to that used through the medium of a vinous or spirituous beverage liquor, and the provision that "prescriptions for any other liquor shall be void" undoubtedly is to denounce any other *beverage* liquor. It would have been very easy for Congress to have said that the aggregate amount of alcohol administered by prescription for internal use, in any form, should not exceed a half a pint in 10 days. This it has not done.

It follows that there is no limitation upon either the prescription or administration of nonbeverage intoxicating liquor. The Pharmacopœia and the National Formulary, which have statutory approval in section 4 of title 2 of the act, as well as common experience, instruct the physician in the compounding of a beverage intoxicating liquor with an ingredient, subject to his selection as innocuous in the specific case, which will deprive the result of palatability. Thus will his administration be taken beyond the scope of the law. We see nothing in the law which prevents resort to this expedient when alcoholic stimulant is indicated to the physician's judgment beyond the limitation of a half pint within 10 days. This compounding may be done, as the profession knows, and it is also known to intelligent laymen, without deterioration of the expected therapeutic effect of the administration, except in those rare and negligible cases where the palate is to be tickled as part of the treatment, and these Congress seems to have provided for in section 6, where medical attention to such appetites is legislatively considered.

We see no good reason, contemplating the course of decisions, justifying restrictive legislation that the exercise of this police power might

be effective, some of which we have considered above, why Congress may not have legislated to prohibit the administration by physicians' of beverage liquors altogether, requiring the use of such medication, innocuous in the specific instance, as would render the prescription unpalatable. Congress, in our judgment and in the larger public interest, may burden the profession, when the drug alcohol or a potable intoxicating liquor is indicated, with an obligation to make its administration directly. It is understood to be the drug effect of the alcohol in the medium employed which the physician seeks, and not that which results from beverage use, merely. It is not urged here that any other component of the intoxicating liquor sought to be administered is relied upon for its therapeutic effect. What is complained of here, therefore, is not an improper limitation upon the exercise of professional obligation, but of a limitation of a mere privilege.

It may be urged that our construction weakens the force of the restrictions, and consequently the act itself, as the weapon for the enforcement of the constitutional provision. We do not think so. The law remains fully efficacious to deal with the physician who seeks to evade the amendment's purpose by affording a bibulous patient the means, even in what would ordinarily be considered a nonbeverage form, to gratify mere appetite. Any prescription containing more than one half of 1 per cent. of alcohol, and however nonbeverage as ordinarily considered, if given for beverage purposes, would constitute, manifestly, a violation of the law. The law as it stands is able to deal with evasions and subterfuges. Undoubtedly such exercise of professional bad faith would involve the physician and his patient in the joint commission of an offense against the United States, to which the law of conspiracy would apply. The provisions attacked in the complaint, in this light, appear to be not arbitrary limitations upon professional judgment, but limitations of a privilege which, we think, Congress is competent to take away altogether that the purpose of the amendment may be more effectively accomplished.

A very well considered and recent opinion of the District Court of Appeal of California (In re Hixson, 214 Pac. 677, decided in June, 1923) covers very fully, by reasoning and citation, all the questions arising in this case. We are not called upon here, however, to go as far in upholding the legislation attacked as in this Hixson Case, which, considering a city ordinance placing a more drastic limitation upon alcoholic prescriptions than in the federal act, holds that the sale of intoxicants for medical purposes may be wholly prohibited in order to make effective the law against beverage use. Congress, in the statutes before us, has seen fit to recognize the office, and, for the time being, to provide for the use, of the drug alcohol, for internal administration by the medical profession.

Except as above indicated, there is no reason here to consider how much farther it may go.