CHARLOTTE I. LONG, Plaintiff, v. BREHON B. SOMERVELL, Defendant.*

Supreme Court, Special Term, New York County, October 11, 1940.

* Affd., 261 App. Div. 946.

*Herman Rosenfeld, Arthur Garfield Hays* and *Darwin J. Meserole,* for the plaintiff.

*John T. Cahill, United States Attorney for the Southern District of New York,* for the defendant.

HAMMER, J. Plaintiff moves for judgment on the pleadings (Civ. Prac. Act, § 476 and Rules Civ. Prac. rule 112) in favor of the plaintiff on plaintiff's first cause of action, on the ground that the answer interposed herein by the defendant is insufficient in law on the face thereof with respect to the said first cause of action, and for an order (Rules Civ. Prac. rule 109, subd. 6) striking out the partial affirmative defense contained in the answer on the ground that it appears on the face thereof that it is insufficient in law.

Plaintiff, a citizen and resident of the city, was a stenographer in the Work Projects Administration in the city of New York. Defendant is the administrator of the local operating unit where plaintiff was at work. Plaintiff seeks damages for her alleged wrongful discharge on June 25, 1940, arising out of alleged illegal, unlawful and malicious interference by defendant with her right to employment. The damages consist of the sum of $826.80 she would have received up to June 30, 1941, to which date it is alleged

she was qualified to remain employed by the administration and a further sum of $5,000 for alleged denial of the exercise of her civil and political rights as an American citizen and injury to her good name, credit and reputation as a loyal American citizen, and for being exposed to public humiliation and stigma and for suffering mental anguish and distress.

As stated in the pleadings, pursuant to authority conferred by the Emergency Relief Appropriation Act of 1935, the President of the United States, by executive order, established the Works Progress Administration, for the purpose of operating a program of useful public work projects, and to aid needy unemployed persons by providing work on such projects, which was thereafter continued by the Emergency Relief Appropriation Acts of 1936, 1937 and 1938.

On July 1, 1939, by Reorganization Plan No. 1, it was provided that the name of the Works Progress Administration should be changed to the Work Projects Administration, and that it be consolidated, together with other agencies, under the Federal Works Agency.

Pursuant to the Emergency Relief Appropriation Act, fiscal year 1940, the Work Projects Administration was extended until June 30, 1940, and was thereafter extended until June 30, 1941.

Plaintiff alleges and defendant admits in the month of March, 1940, plaintiff applied for work with the Work Projects Administration in the city of New York by which she was duly accepted and regularly employed as a stenographer on Project No. 665–97–3–2 W. P. No. 6, receiving as compensation from said Work Projects Administration, her employer, the sum of $63.60 each fiscal period of four weeks.

By joint resolution (Public Resolution No. 88, 76th Congress, 3d Session [H. J. Res. 544]) Congress adopted the "Emergency Relief Appropriation Act, fiscal year 1941" (U. S. Code Congressional Service, No. 6, p. 608, — U. S. Stat. at Large, ——, ch. 432), which the President approved June 26, 1940, thereby making appropriations for work relief and relief for the fiscal year ending June 30, 1941.

The provisions of this act directly involved are as follows:

"Sec. 15 (f). No alien, no Communist, and no member of any Nazi Bund Organization shall be given employment or continued in employment on any work project prosecuted under the appropriations contained in this joint resolution and no part of the money appropriated in this joint resolution shall be available to pay any person who has not made or who does not make affidavit as to United States citizenship and to the effect that he is not a Commu-

nist and not a member of any Nazi Bund Organization, such affidavit to be considered *prima facie* evidence of such citizenship, and that he is not a Communist, and not a member of any Nazi Bund Organization. * * *

" Sec. 17 (b). No portion of the appropriation made under this joint resolution shall be used to pay any compensation to any person who advocates, or who is a member of an organization that advocates, the overthrow of the Government of the United States."

After adoption of the resolution by Congress and before approval by the President a paper in affidavit form designated " W. P. A. form 608 " was prepared. Among others, it contained the following provisions:

" 2. That I do not and will not advocate or hold membership in any organization that advocates the overthrow of the Government of the United States.

" 3. And further, that I am not an alien, nor a Communist, nor a member of any Nazi Bund organization, and that I will not become a Communist or a member of any Nazi Bund organization during any time I may be paid from fund appropriated to the Work Projects Administration."

Plaintiff charges that defendant on June 22, 1940, illegally, without authority and contrary to law, caused this form to be printed and issued and defendant maliciously and with intent to deprive plaintiff of her employment, illegally and without authority and contrary to law and as a condition to her continued employment, on June 25, 1940, ordered plaintiff to sign this form. She declined to sign it and was immediately discharged. Plaintiff alleges defendant thus imposed a condition of continued employment which constituted an illegal, unlawful and malicious interference by defendant with plaintiff's right to her employment. Defendant admits plaintiff was ordered to sign the affidavit as a condition to her continued employment. He denies he acted maliciously and with intent to deprive plaintiff of her employment illegally and without authority and contrary to law. He affirmatively states the forms were caused to be printed by and were transmitted to defendant by his official superiors to be executed by all employees of the Work Projects Administration and as an administrative matter it was necessary to have the information required by the forms as soon as possible to avoid payments prohibited by the act upon its approval.

In addition, defendant denies plaintiff was in all respects qualified to be employed by the Works Projects Administration and to remain employed until June 30, 1941, and that she had rendered completely satisfactory service and at the time of her dismissal she was ready, able and willing to perform such work.

An offer of reinstatement on July 8, 1940, based upon plaintiff's affidavit of June 29, 1940, upon a motion for reinstatement in a prior action in the United States District Court, dismissed on jurisdictional grounds, is pleaded as a partial affirmative defense.

In contending for the illegality of the acts of defendant, it is plaintiff's position:

(a) That defendant acted without legislative authority because on June 25, 1940, the act had not gone into effect as the President did not approve it until the next day, June 26, 1940, and by its terms it became effective July 1, 1940.

(b) That assuming defendant acted upon instruction of his superiors he is none the less liable as the authority to act was not validly conferred upon him.

(c) Defendant acted contrary to the express provisions of the act which makes it unlawful to deprive or attempt to threaten to deprive by any means, any person of any employment, position, work, compensation or other benefit, provided for or made possible by the joint resolution, on account of race, creed, color, or any political activity, support of, or opposition to any candidate or any political party in any election.

In attacking the affirmative defense plaintiff concedes that it would be effective in mitigation of damage beyond July 8, 1940, if sections 15 (f) and 17 (b) were valid. But she asserts they are unconstitutional and the defense insufficient.

These sections plaintiff urges contravene the provisions of the Fifth and Sixth Amendments of the Constitution in that they are vague, indefinite and ambiguous; they offend against the First Amendment in that they abridge the freedom of speech or of the press and, finally, they are void as an improper delegation of power.

The contention being one of validity, the question is to be considered in the light of the standing of the party who seeks to raise the question and of its particular application. (*Chicot County Drainage District* v. *Baxter State Bank*, 308 U. S. 371.)

It is not alleged in the complaint nor elsewhere asserted that plaintiff is an alien, Communist or member of any Nazi Bund organization, or that she advocates, or is a member of an organization that advocates the overthrow of the government of the United States. It is not disputed that in the prior United States District Court action plaintiff in an affidavit in support of a motion requiring her reinstatement stated she was a citizen and was not a Communist, or a member of a Nazi Bund organization and that she did not advocate the overthrow of the government of the United States. It, therefore, appears that plaintiff is not affected by the alleged unconstitutionality in the feature of the act complained of and will

not be heard to raise objection on that ground. (*Jeffrey Mfg. Co.* v. *Blagg,* 235 U. S. 571.) At best her claim is one of interference with her right to work at her particular employment, but she concedes that one working for the United States has no property in his position, although asserting parenthetically he undoubtedly possesses a pecuniary interest for unwarranted interference for which he may maintain an action. But *Love* v. *United States* (108 F. [2d] 43), which distinguishes *Dismuke* v. *United States* (297 U. S. 167), is to the contrary. In the *Love* case it was held the right to work at a particular employment must be shown to have become vested by law in the person asserting it. There the cause assigned for the discharge was, " This man was not wanted on this project." Love charged there was no just cause for the discharge and that he was entirely without fault and able to proceed with the work that he was engaged in and that his services were needed and necessary for the proper execution of the project and that he had refused to resign. The court said (p. 49): " But in the instant case there was no absolute right to work conferred upon Mr. Love by mandatory Act of Congress comparable to the right to the annuity granted to Dismuke, either because of Mr. Love's preference privileges or because he had passed examination and had obtained some employment under the Public Works Administration."

It is established that to have standing in court plaintiff must show an injury or threat to a particular right of her own, as distinguished from the public's interest in the administration of the law, and that neither damage nor loss of income in consequence of the action of the government which is not an invasion of recognized rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such. (*Perkins* v. *Lukens Steel Co.,* 310 U. S. 113.) It is also settled that constitutional questions are not to be decided hypothetically. When particular facts control the decision they must be shown. (*Anniston Mfg. Co.* v. *Davis,* 301 U. S. 337.) In *Keim* v. *United States* (177 U. S. 290) it was held that the determination of fitness to discharge the duties of the position is not a mere ministerial act but one involving the exercise of judgment of the appointing power, and one of those acts over which the courts have no general supervising power, and in the absence of specific provision to the contrary, the power of removal is incident to the power of appointment.

This principle has been applied in cases arising under various Federal Emergency Relief appropriation acts and executive orders made in connection therewith. (*Love* v. *United States, supra; Block* v. *Sassaman,* 26 F. Supp. 105; *Matter of Donnelly,* —— Mass.

—; 24 N. E. [2d] 327; *Waterman* v. *Somervell,* unreported; File Civ. 8–380 U. S. Dist. Court, Southern District of New York, KNOX, D. J.; *Goldstein* v. *Sommervell,* 170 Misc. 602.)

As to the other contentions raised it is sufficient to observe that officers and agents of the Federal government are not responsive to suits or claims arising from their actions in connection with matters resulting from the performance of their official duties. (*Block* v. *Sassaman, supra.*) The acts complained of were performed by defendant who was duly appointed and required to act in the discharge of official duty, and the motives with which this duty was performed are immaterial and insufficient to impose liability upon him just as motives would have been insufficient to fasten liability upon the head of the department. The rule of immunity, the reason for which is found in public policy, applies to defendant as if the act had been performed by the superior officer himself. (*Cooper* v. *O'Connor,* 99 F. [2d] 135.)

It is to be further noted that if the action were cognizable by the court denial of the motion would be required as issues of fact, especially in respect of alleged malice and plaintiff's alleged readiness and ability and willingness to continue in her work, are raised which require a trial. Likewise as a matter of discretion the motion should be denied as the question of constitutionality should not be determined without a full investigation into the facts which could only be had upon a trial.

Although plaintiff brings the motion it appears defendant is entitled to judgment and under rule 112 of the Rules of Civil Practice the court may give judgment accordingly without regard to which party makes the motion. Plaintiff's motion is, therefore, denied and judgment dismissing the complaint is awarded to defendant, with costs. Settle order.