THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* REDELL PARKER, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Youth Term Court, February 16, 1955.

*Frank S. Hogan, District Attorney* (*Peter J. McQuillian* of counsel), for plaintiff.

*Florence M. Kelley* and *Irving Lang* for defendant.

KAPLAN, M. The defendant, age eighteen, entered one of the public high schools of the City of New York, at about 9:05 A.M. on January 20, 1955, and proceeded to the fourth floor of the building. A teacher discovered him, and asked him if he were a student, and upon receiving a negative response the teacher took him to the principal's office. The defendant testified that he was to meet a friend in the fourth-floor lavatory pursuant to an understanding between the defendant and the friend reached the day before. The alleged purpose of the meeting was to collect a debt from the friend. The defendant further testified that he was in the building two or three minutes before he was apprehended by the teacher, and that he had " peeked " into the fourth-floor lavatory but immediately left when he did not find his friend therein. When asked by the court why he did not remain in the lavatory, the defendant remained silent. The school records reflect that the alleged friend had been a student at the school but had not been in attendance for over a year.

The defendant was not a student at the said high school, nor at any other school. He was not the parent or legal guardian of any pupil in regular attendance at the school, nor did he have permission from either the principal, custodian or any other person in charge of the school premises to enter the building.

There is no evidence of any molestation, annoyance, or disturbance of any student or teacher, nor destruction to property. At no time was the defendant disorderly or disrespectful to anyone in authority.

The defendant's unauthorized presence in the school is contended by the People to be in violation of section 722-b of the Penal Law, which became effective July 1, 1954 (L. 1954, ch. 519). This section provides as follows: " § 722-b. Any person not the parent or legal guardian of a pupil in regular attendance at said school who loiters in or about any public school building or grounds without written permission from the principal, custodian or other person in charge thereof, or in violation of posted rules or regulations governing the use thereof, shall be guilty of disorderly conduct.''

The defendant attacks the statute upon the ground that it is too vague, indefinite and uncertain to be enforcible as a penal statute. The defendant contends further that if the statute be deemed constitutional he should be acquitted because there was nothing in his actions or intent to provoke a breach of the peace.

1. The first question involves the constitutionality of section 722-b. Is the section clear and definite, or is it too vague, general or indefinite ?

The decisions admonish that we should indulge every presumption in favor of validity and declare no act of the Legislature void unless invalidity be shown beyond a reasonable doubt (*United States* v. *Jin Fuey Moy,* 241 U. S. 394; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259).

It is a familiar rule of construction that the intent with which statutes have been enacted is to be determined from the content, the occasion and necessity of the law, from the evils to be corrected, and the objects and remedy in view. The legislative intent is to be sought and ascertained from the words and language used (*McCluskey* v. *Cromwell,* 11 N. Y. 593).

The subject matter of the entire section 722-b of the Penal Law, read as a whole, reinforces my conclusion as to the legislative intent. The statute was enacted and was inspired on the part of the law-making body to prevent certain abuses which either had arisen and prevailed in the public schools or which were likely to arise. These evils had to be nipped in the bud. The object of the section was to " combat an increasingly difficult situation with respect to intruders and loiterers in and about the schools,'' and it aimed " to protect the children, the school personnel and Board of Education property '' (memorandum in support of bill

submitted by New York City board of education). The danger to the students, teachers and property is well understood which arises from the presence of nondescript characters on the premises, especially when school is in session.

A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible of different interpretations, will not render it nugatory. In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required by them, the courts should view the statute from the standpoint of the reasonable man who might be subject to its terms. In *People* v. *Grogan* (260 N. Y. 138, 145), the court stated: " Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements" (*Connally* v. *General Const. Co.,* 269 U. S. 385, 391; *People* v. *Briggs,* 193 N. Y. 457, 459).

When a statute employs words or phrases that have a well-settled meaning of which a reasonable man in the ordinary conduct of his affairs is fully aware, it is not for the court to determine that the statute is ambiguous or indefinite because through a strained construction of those words and phrases some ambiguity might arise (*United States* v. *Petrillo,* 332 U. S. 1; *Robinson* v. *United States,* 324 U. S. 282).

Upon a mere inspection of the words of the instant statute, it does not appear that its words and phrases are so vague and indefinite that the penalty prescribed for its violation constitutes a violation of due process of law. The section forbids a specific and definite act. It forbids loitering in or about any public school building or grounds and permits entrance only under specified conditions. It is clear that the meaning of the word " loiter " as employed in the section is sufficiently definite and certain to advise the public generally what acts and conduct are prohibited. In the recent case of *People* v. *Bell* (306 N. Y. 110, 113, 115) the Court of Appeals stated: " Loitering is a word in common usage, whose meaning is well understood * * * In the case of this offense, the expression ' any person who loiters ' * * * is specific in its import ".

In a concurring opinion in the same case Judge DESMOND, at page 117, stated that the term " ' loitering ' * * * has by long statutory usage, taken on a reasonably definite meaning ".

In *People* v. *Berger* (169 N. Y. S. 319, 320), the court held that the " word ' loitering ' means to be slow in moving; to delay; to hinder; to be dilatory; to spend time idly; to saunter; to lag behind."

Defendant argues that the statute would arbitrarily and unreasonably subject innocuous and legitimate acts to penal sanctions. Constitutional questions, however, are not to be decided hypothetically. When particular facts control the decision they must be shown (*Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337; *Long* v. *Sommervell*, 175 Misc. 119, affd. 261 App. Div. 946; *Realty Revenue Corp.* v. *Wilson*, 181 Misc. 802). Defendant's argument is based on the false premise that any regulation of society which is made for the general welfare is invalid if it prohibits a person from doing what he would otherwise have a right to do. That the rights of the individual are subservient to the welfare of the general public is uniformly recognized by the courts (*Jackson* v. *Massachusetts*, 197 U. S. 11; *Booth* v. *Illinois*, 184 U. S. 425). The right to use public property is subject to such reasonable regulations as the governing body may make for the general good. The statute in question is reasonable and one within the power of the Legislature to adopt and it does not infringe upon any constitutional right of defendant. The statute does not prevent anyone from going on the premises to transact legitimate business. The intent of the act is to prohibit some acts that are inherently wrong, and other acts, not wrong within themselves, are regulated, and only prohibited from being committed under such circumstances and in such places as may result in public disorder and cause a breach of the peace.

There can be no question of the Legislature's right to enact a law forbidding persons from loitering on school premises, especially when students are in attendance. If such a necessity existed, and surely it does, to protect school children against loiterers, the Legislature had the authority to do so. The peace and safety of school children when threatened, certainly calls for the exercise of the police power of the State for their protection. The evils to be corrected are well known. It is known that students are the prey of the vicious dealers of narcotics, lewd and lascivious literature, and subject to attacks by persons motivated by an unnatural or abnormal sensual interest. Teachers have been attacked and public property destroyed.

The statute and the beneficent purposes for which it was enacted must be preserved. Where the evil sought to be prevented is apparent, a reasonable construction of the language

employed is justified (*United States* v. *Walter*, 263 U. S. 15; *People* v. *Pieri*, 269 N. Y. 315).

California and Arizona have similar statutes enacted, no doubt for reasons similar to the purpose for which section 722-b was enacted. The California statute reads (Cal. Penal Code, § 647a):

" 647a

" (1)   *   *   *

" (2) Every person who loiters about any school or public place at or near which school children attend, or who loiters in or about public toilets in public parks, is a vagrant, and is punishable ".

The Arizona enactment is as follows (Ariz. Code, 1939 [Cum. Supp.], § 43–5902): " 43–5902. *Molesting children or loitering.* —Any person who molests a child under the age of sixteen [16] years, or who without legitimate reason loiters about a school where children are in attendance or a nearby public place frequented by school children, or who loiters in or about a public toilet in a park, shall be deemed a vagrant ".

In *Phillips* v. *Municipal Court of Los Angeles* (24 Cal. App. 2d 453), a case arising under the former California statute which provided in part " Every person   *   *   *   who loiters about any school or public place at or near which school children attend, is a vagrant " (p. 454) the defendant contended that such clause was so uncertain and indefinite, vague, ambiguous and unintelligible as to contravene both the State and Federal Constitutions. I quote with approval from the court's opinion (p. 455):

" The first contention of the petitioner is untenable. The verb ' loiter ' means ' to linger idly by the way, to idle '. As was said in the case of *Robinson* v. *State*, 15 Ala. App. 29 [72 So. 592], ' " Loitering " is a term having a well-recognized meaning in ordinary use, the collective acts constituting which all persons are familiar with.' As was said in the case of *Ex parte Strittmatter*, 58 Tex. Cr. Rep. 156 [124 S. W. 906, 907, 137 Am. St. Rep. 937, 21 Ann. Cas. 477], ' We think the terms " loiter, loaf, and idle " are wholly at variance with the occasional or even frequent presence at such public places by deserving persons who may be for the time being unemployed. It is difficult in matters of this sort by any language which the legislature could have employed to have laid down a rule so definite and precise as not to be the subject matter of criticism. In constructive legislation of this sort, along new lines, some difficulty will be found in so framing the definition as not by a strained construction, or even, perhaps, by a literal construction, to place improper and grievous burdens on deserving persons.'

" It is urged that it is unreasonable to compel all persons to forego the pleasure of loitering about any school or public place at or near which school children attend merely because some persons of evil disposition desire to do so. It will be observed that the law does not attempt to entirely prohibit loitering, but that it confines its prohibitions to loitering about any school or public place at or near which school children attend. However, the mere fact that some innocent people may desire to loiter near a public school does not deprive the legislature of its power to prohibit lotering at such a place if the safety of school children require such legislative action (*Booth* v. *Illinois*, 184 U. S. 425, [22 Sup. Ct. 425, 46 L. Ed. 623]; *Purity Extract, etc. Co.* v. *Lynch*, 226 U. S. 192 [33 Sup. Ct. 44, 57 L. Ed. 184]; *Otis & Gassman* v. *Parker*, 187 U. S. 606 [23 Sup. Ct. 168, 47 L. Ed. 323].) "

The Arizona statute was likewise upheld in *State* v. *Starr* (57 Ariz. 270, 356).

I hold that section 722-b of the Penal Code is constitutional.

2. Was the defendant guilty of disorderly conduct? He claims there was nothing in his actions or intent to provoke a breach of the peace.

Disorderly conduct embraces certain minor offenses, usually defined by statute, consisting of disturbance of the peace and quiet of the public or communities, families or a class of persons, or of conduct which tends to cause or provoke a breach of the peace or corrupt public morals, and a willful or unlawful purpose is not an element of the offense unless made so by statute (*People* [*Mulhern*] v. *Kaufman*, 165 Misc. 670; *People* v. *Perry*, 265 N. Y. 362).

The definition of what constitutes breach of the peace is stated as follows in Ruling Case Law (vol. 8, pp. 284–285, § 305): " In general terms a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace. By ' peace,' as used in the law in this connection, is meant the tranquility enjoyed by citizens of a municipality or community where good order reigns among its members, which is the natural right of all persons in political society. It is, so to speak, that invisible sense of security which every man feels so necessary to his comfort, and for which all governments are instituted. It is not necessary that the peace be actually broken to lay the foundation for a prosecution for this offense. If what is done is unjustifiable and unlawful, tending with sufficient directness to break the peace, no more is required. Nor is actual personal violence an essential element

in the offense. If it were, communities might be kept in a constant state of turmoil, fear and anticipated danger from the wicked language and conduct of a guilty party, not only destructive of the peace of the citizens but of public morals without the commission of the offense. The good sense and morality of the law forbid such a construction '' (see, also, *People* v. *Perry,* 265 N. Y. 362, *supra*; *People* v. *Most,* 171 N. Y. 423).

The reason whereon most cases are said to rest is a tendency to a breach of the peace or the liability to stir up resentment and quarrels. The criminal law seeks to prevent as well as vindicate, and a threatened danger demands correction the same as an actual one. Moreover, the community is disturbed when it is alarmed. Recurring to the above definition, it will be noted that the term '' breach of the peace '' is quite broad, and includes not only all violations of the public peace and order, but acts tending to the disturbance thereof. Applying this definition to the unauthorized presence of defendant in the school, I am of the opinion that it comes within the definition and constituted conduct tending toward a breach of the peace.

When the words '' to loiter '' are used in reference to a public building, there is a connotation of unlawful presence on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this legislation indicates that the act forbidden is motivated by reasons unconnected with the purposes for which school buildings or their environs are used. It is common knowledge that public school property is not free to everyone, like a public street or park. Public school grounds and premises are dedicated to the use of persons eligible to attend the schools, their officers, teachers and employees. Others entering thereon are invitees or licensees or trespassers, and subject to the rules of law applicable to their situation.

The statute did not prevent defendant from entering the school altogether, but prohibited him from doing so unless certain conditions specified therein were met. He did not meet these conditions. Defendant was not authorized by the school authorities to enter the premises; he was not a parent or legal guardian of a pupil in regular attendance, and from his own testimony was not on the premises for any purpose connected with educational objects or with the business of the school. One who enters a school building for the purpose of transacting personal affairs with an alleged pupil in attendance, without the permission of the school authorities, can hardly claim to be in the same

category with those who pursue objects for which the schools are intended.

At proper times and in proper places one may transact his personal business without offending against any law. But there is no right, inherent or constitutional, to transact personal business within the limits of a public school. If such were the case, I can see no reason why every citizen should not claim a right to use the public schools for purposes disconnected with educational ends, for the exercise of his trade or profession. The exercise of such right must yield to the legislative power properly exercised over public schools for the primary objects for which they were established. The right of the public in regard to their schools is to use them for the purposes connected with education, provided they are used lawfully for that purpose. But even the right of such use is subject to reasonable legislation for the general good. I fear that the defendant has confused in his mind the right to enter upon public premises, with an imaginary though nonexisting right to enter therein, regardless of statute. No statute, Federal or State, confers any right to enter upon school premises regardless of municipal control over them.

The mere fact that defendant was in the school and created no disturbance does not change the character of his act. In *People* v. *Rabey* (48 N. Y. S. 2d 937, 939), it was stated: "It is not necessary to constitute the offense of disorderly conduct that a person specifically intend to provoke a breach of the peace. That is one way in which it can be committed. It also can be committed by the doing of any act ' whereby a breach of the peace may be occasioned.' "

And in *People* v. *Yergan* (164 Misc. 83, 85), the court reiterated: "It is immaterial whether any breach of the peace actually occurred or whether the persons affected by the defendant's conduct were actually annoyed."

Conduct which tends to a breach of the peace within certain limitations is a matter of discretion on the part of the magistrate (*People* v. *Lipschitz,* 120 Misc. 633; *People* v. *Nixon,* 248 N. Y. 182).

The defendant's conduct here was such that a breach of the peace might have been occasioned thereby. Whether or not the children or teachers were actually annoyed or not is immaterial. The defendant's unauthorized presence could have been resented either forcibly or by loud and boisterous action, regardless of the fact of what actually took place (*People* v. *Cohen,* 136 N. Y. S. 163). In considering whether or not a breach of the peace might have been occasioned, it is common knowledge, as I have stated

before, that school children are the prey and victims of vicious dealers in narcotics and lewd literature, and subject to molestation by sex degenerates. Ignorance or credulity may easily make them victims of enticement or decoy. Teachers have been annoyed and attacked, public property destroyed, or other breach of the peace may be occasioned, by trespassers. It is the duty of the authorities to protect the students and their teachers and the public property. Children and their teachers are citizens and entitled to protection while using the facilities of the public schools, and the law must be vigorously enforced to afford them such protection that they need not fear harm from trespassers while pursuing their endeavors. Any laxity in enforcement will only tend to encourage the evils sought to be eradicated.

Defendant's unauthorized presence alone was sufficient to incite all right-thinking persons to indignation and possible violence. His excuse that he was on the premises concerning a debt owed him by an alleged former student that he knew, that he did not bother anyone, is wholly without justification. If one is permitted to enter schools indiscriminately, then the students and teachers are subject to be insulted, molested and even harmed, which is what the statute seeks to prevent. If a person charged under the statute has no official business on the school premises and no reason for being there except to linger on the premises for personal reasons, then he is loitering there, within the terms of the statute.

Upon the evidence, I am satisfied of the defendant's guilt, and that he has committed such an act as to constitute disorderly conduct. Accordingly, the defendant's motions to dismiss the complaint are denied.