947 So.2d 641 (2007)
J.L.S., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2604.
District Court of Appeal of Florida, Third District.
January 24, 2007.
*643 Bennett H. Brummer, Public Defender and Shannon P. McKenna, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Richard L. Polin, Bureau Chief, and Erik M. Figlio, Assistant Attorney General, for appellee.
Before GERSTEN, GREEN, and SUAREZ, JJ.
GREEN, J.
J.L.S. appeals his delinquency adjudication for trespass in a school safety zone in violation of Section 810.0975(2)(b), Florida Statutes (2005), on the basis that this statute is facially unconstitutional for overbreadth, vagueness, and substantive due process. We find no constitutional infirmity to this statute on these grounds and affirm.

I.
J.L.S., a juvenile and student at Douglas MacArthur High School North, was spotted walking through Miami Central High School's ("Central") safety zone at 7:25 a.m. on a school day by a police officer. On two prior separate occasions, J.L.S. had been warned not to return to Central's school safety zone. J.L.S. was arrested and a petition of delinquency was filed charging him with one count of trespass within a school safety zone in violation of Section 810.0975(2), Florida Statutes and one count of resisting arrest without violence in violation of Section 843.02, Florida Statutes (2005).
J.L.S. moved to dismiss the petition for delinquency on the grounds that Section 810.0975(2)(b) of the statute was unconstitutional on its face. After a hearing on the motion, the trial court denied the same. J.L.S. then pled no contest to both charges in the petition, but reserved his right to appeal the denial of his dispositive motion to dismiss. J.L.S. was adjudicated delinquent and placed on probation with certain special conditions.
On this appeal, J.L.S. seeks our de novo review of his facial constitutional challenges to Section 810.0975(2)(b) of the statute. That section provides that:
During the period from 1 hour prior to the start of a school session until 1 hour after the conclusion of a school session, it is unlawful for any person to enter the premises or trespass within a school safety zone or to remain on such premises or within such school safety zone when that person does not have a legitimate business in the school safety zone *644 or any other authorization, license, or invitation to enter or remain in the school safety zone. Any person who violates this subsection commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
J.L.S. essentially argues that this section is facially unconstitutional because it is impermissibly overbroad, vague, and violates substantive due process.

A. OVERBREADTH
J.L.S. first argues that Section 810.0975(2)(b), is impermissibly overbroad because: (1) it restricts a substantial amount of constitutionally protected conduct such as freedom of speech, peaceable assembly with others for political or social purposes, or freedom to move about freely; (2) in the absence of a scienter requirement, it prohibits entirely innocent activities such as leisurely walking or driving about in the school zone; and (3) it is not narrowly tailored to effectuate its purpose of protecting school aged children. We disagree.
Initially, we recognize that both the First Amendment to the United States Constitution and Article 1, Section 4, of the Florida Constitution protect the rights of individuals to express themselves in many ways. See Wyche v. State, 619 So.2d 231, 233 (Fla.1993). "The Constitutions protect not only speech and the written word, but also conduct intended to communicate." Id. The rights of individuals to associate with whom they please and to assemble with others for political or social purposes are also protected by these constitutional provisions. Id.
A statute is deemed to be overbroad if it seeks to control or prevent activities properly subject to regulation by means which sweep too broadly into an area of constitutionally protected freedom. See Firestone v. News-Press Publ'g Co., Inc., 538 So.2d 457, 459 (Fla.1989). Any restrictions on first amendment rights must be supported by a compelling governmental interest, and must be narrowly drawn to insure that there is no more infringement than is necessary. Id.
The doctrine of overbreadth permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially "because it also threatens others not before the court  those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Sult v. State, 906 So.2d 1013, 1019 (Fla.2005) (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). In other words, the issue of overbreadth is one of the few exceptions to the traditional rules that courts will not consider factual questions beyond the scope of the case at hand. See Schmitt v. State, 590 So.2d 404, 411-12 (Fla.1991). "`Hypothetical consequences' are considered in the case of allegedly overbroad statutes precisely because this is the only way to give effect to the constitutional right of free speech." Id. at 411.
The deleterious result of overbroad statutes often is described as a "chilling effect." . . . The overbreadth doctrine and its requirement of considering hypothetical consequences is intended to eliminate this chilling effect and thus allow for the free, unhindered exercise of constitutional rights.
Id. at 412 (citations omitted). It is said, however, that in the arena of free speech and expression, the overbreadth doctrine is an unusual remedy which is to be used sparingly, particularly where the challenged statute is primarily meant to regulate *645 conduct and not merely pure speech. Id.
In the instant case, J.L.S.'s own conduct is clearly proscribed by Section 810.0975(2)(b), and we recognize that he has standing to challenge this statute for facial overbreadth. We nevertheless cannot conclude that this statute is substantially overbroad and therefore facially unconstitutional. This statute is designed to primarily regulate conduct (i.e. trespass within a school safety zone) rather than pure speech. We believe that any applications of this statute that violate the First Amendment can be remedied through as-applied litigation.
Initially, we note that J.L.S. bears the burden of demonstrating from both the text of the statute and from actual facts that substantial overbreadth exists. See Virginia v. Hicks, 539 U.S. 113, 122, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). On the record before us, we find that J.L.S. has not met that burden. J.L.S. argues that the statute is impermissibly overbroad because it impedes the right of speech, association, movement, and peaceful political and/or social assembly within the designated school zone. Under the plain language of this statute, however, a person is not in violation if that person (1) has legitimate business in the school zone, or (2) otherwise has authorization, license, or invitation to enter or remain in the school zone.[1] J.L.S. has made no showing that persons seeking to engage in constitutionally protected speech or assembly rights within the school safety zone would have no authorization to do so. Moreover, J.L.S. cannot establish as a matter of law that the enforcement of this statute against individuals like himself, who have received notices baring them from school safety zones, have first amendment rights to return to exercise expressive or associational rights. The fact that a person may be exercising first amendment rights while violating otherwise proper restrictions upon his or her entry to a public facility does not insulate that person from prosecution for trespass. See Downer v. State, 375 So.2d 840, 844-45 (Fla.1979). The United States Supreme Court has definitively stated that the First Amendment is not implicated in such an instance:
Neither the basis for the barment sanction (the prior trespass) nor its purpose (preventing future trespasses) has anything to do with the First Amendment. Punishing its violation by a person who wishes to engage in free speech no more implicates the First Amendment than would the punishment of a person who has (pursuant to lawful regulation) been banned from a public park after vandalizing it, and who ignores the ban in order to take part in a political demonstration. Here, as there, it is [a defendant's] nonexpressive conduct this entry in violation of the notice-barment rules not his speech, for which he is punished as a trespasser.
Hicks, 539 U.S. at 123, 123 S.Ct. 2191. A state is not forbidden under the United States Constitution from controlling the use of its own property for its own lawful nondiscriminatory purposes. See Downer v. State, 375 So.2d at 844-45.
The purpose of this statute is clearly the protection of school children. We note, and J.L.S. certainly does not dispute, that this is a compelling governmental interest. The proscriptions of the statute, with few notable exceptions, apply to all persons who enter school safety zones, not just those who seek to engage in First Amendment activities. There has been no demonstration *646 in this record that this statute would prohibit a "substantial" amount of protected speech in relation to its otherwise legitimate applications. See Hicks, 539 U.S. at 124, 123 S.Ct. 2191 ("That this is not surprising since the overbreadth doctrine's concern with `chilling' protected speech `attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct.'") (quoting Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). Nevertheless, since any application of Section 810.0975(2)(b) which violates the First Amendment can be remedied through as-applied litigation, we decline to use the "strong medicine" of overbreadth to invalidate this entire statute.

B. VAGUENESS
J.L.S. next argues that Section 810.0975(2)(b) is facially unconstitutional because it is impermissibly vague. Specifically, he asserts that this section requires that a person have "legitimate business" or "other authorization, license, or invitation to enter or remain" in the safety zone during the relevant time frame. He argues, however that the undefined phrases "legitimate business" or "other authorization, or license", or invitee status are vague and do not provide fair notice to an ordinary person of the proscribed conduct. He posits, for example, that since the physical boundaries of a school's safety zone are not readily apparent, the average person may be unaware of the fact that he or she is entering or remaining in a school's safety zone in violation of this statute.
Unlike the overbreadth challenge, however, before we undertake an analysis of this statute for a vagueness infirmity, we must first ascertain whether J.L.S. has standing to raise this challenge by examining his conduct in the record before us. See State v. Brake, 796 So.2d 522 (Fla. 2001); Dickerson v. State, 783 So.2d 1144 (Fla. 5th DCA 2001). That is because the traditional rule is that a person to whom a statute may constitutionally be applied lacks standing to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. See Sieniarecki v. State, 756 So.2d 68, 75 (Fla.2000). "If the record demonstrates that the [defendant] engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute, then he cannot successfully challenge it for vagueness nor complain of its vagueness as applied to the hypothetical conduct of others." Id. We are thus compelled to examine J.L.S.'s conduct in this case before analyzing other hypothetical applications of this statute raised by him. See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).
We conclude that J.L.S. lacks standing in this case to raise a facial vagueness challenge to the statute with respect to the hypothetical conduct of others because his own actions fell within the statute's proscriptions. That is to say that at the time of his arrest, J.L.S. was committing a trespass after warning. He knew that he was in the school's safety zone at a proscribed hour and that his authorization to enter and/or remain in the safety zone had previously been revoked. Thus, not only is this statute not unconstitutional as applied in this case, but the appellant also lacks standing to raise a facial vagueness challenge. See Sieniarecki; Dickerson. We therefore do not labor further on this issue and proceed to his final issue on appeal.

C. SUBSTANTIVE DUE PROCESS
J.L.S. lastly asserts that Section 810.0975(2)(b) may be used to punish entirely *647 innocent activities and as such is violative of substantive due process. We again disagree.
The basic test for substantive due process, as enunciated by the Florida Supreme Court, is whether the challenged statute bears a reasonable or rational relation to a permissible legislative objective and is not discriminatory, arbitrary, or oppressive. See Lasky v. State Farm Ins. Co., 296 So.2d 9, 15-16 (Fla.1974); State v. Saiez, 489 So.2d 1125, 1125-1129 (Fla. 1986). The Court has further explained that:
It therefore becomes necessary for us to examine the objectives of the Legislature in enacting this statute in order to determine whether the provisions of the act bear a reasonable relation to them. In doing so, we do not concern ourselves with the wisdom of the Legislature in choosing the means to be used, or even with whether the means chosen will in fact accomplish the intended goals; our only concern is with the constitutionality of the means chosen.
Lasky, 296 So.2d at 15-16.
The obvious legislative objective of Section 810.0975(2)(b), as pointed out by the State is the protection of school children from harmful or negative persons such as drug dealers, gang members, or pedophiles. This, we think, without question, is a legitimate exercise of the government's regulatory or police power for the safety of the community. The government's interest in protecting school children is both legitimate and compelling. Moreover, we find both the geographical and temporal restrictions imposed by the statute to bear a rational or reasonable relation to the legislative goal of the statute. The fact that some otherwise innocuous activity might be curtailed during the operational time of this public safety statute does not thereby render it unconstitutional. See United States v. Salerno, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("we have repeatedly held that the Government's regulatory interest in community safety, in appropriate circumstances, outweigh an individual's liberty interest"); see also e.g., People v. Parker, 208 Misc. 978, 138 N.Y.S.2d 2, 8 (N.Y.City.Mag.Ct.1955) ("Defendant's argument is based on the false premise that any regulation of society which is made for the general welfare is invalid if it prohibits a person from doing what he would otherwise have a right to do. That the rights of the individual are subservient to the welfare of the general public is uniformly recognized by the courts."); Arizona v. Starr, 57 Ariz. 270, 113 P.2d 356 (1941) (law forbidding persons from loitering on school premises or within 300 feet thereof while children attended school was proper exercise of state's police power for protection of school children); Phillips v. Mun. Court of Los Angeles, 24 Cal.App.2d 453, 75 P.2d 548, 549 (1938) ("the mere fact that some innocent people may desire to loiter near a public school does not deprive the Legislature of its power to prohibit loitering at such a place if the safety of school children require such legislative action.").
Thus, because we find that the enactment of Section 810.0975(2)(b) was a legitimate exercise of the State's police power for the safety of school children, we can find no constitutional violation of substantive due process.

CONCLUSION
Based upon all of the foregoing, we find no constitutional infirmity to the challenged statute. Accordingly, we affirm the order under review.
NOTES
[1] The statute also is inapplicable to residents or persons engaged in the operation of a licensed commercial business within the school safety zone. See § 810.0975(3).