# PURITY EXTRACT AND TONIC COMPANY *v.* LYNCH.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 464. Submitted October 28, 1912.—Decided December 2, 1912.

The decision by the state court that an article is within the prohibition of a state statute is binding here.

The protection accorded by the Federal Constitution to interstate commerce does not extend beyond the sale in original packages as imported; and a contract made in one State for delivery of liquor in another State which does not limit the sale in the latter State to original packages encounters the local statute and cannot be enforced if contrary thereto.

Where there have been no purchases and no deliveries under a contract for delivery of liquor, but the vendee has given notice of refusal to accept because the contract is illegal in the State of delivery, the state court, in sustaining the illegality of the contract, does not deny the seller the right to sell the article or have it transported in interstate commerce.

Where a large number of bottles, each in a separate box, are all contained in one case, each bottle is not to be regarded as a separate original package and protected from interference by state statute under the commerce clause of the Constitution; and this even if the contract of shipment declared there was to be no retail sale by the consignee.

*Quære*, and not decided, whether an article such as Poinsetta, the beverage involved in this case, having a low percentage of malt, is governed by the Wilson Act.

A State may, in the exercise of its police power, prohibit the sale of intoxicating liquor, and to the end of making the prohibition effectual may include in the prohibition beverages which separately considered may be innocuous; and so held as to Poinsetta, a beverage containing a small percentage of malt.

The court has no concern with the wisdom of exercising the police power, and unless the enactment has no substantial relation to a proper purpose, cannot declare that the limit of legislative power has been transcended.

For the courts to attempt to determine whether the exercise of the police power within legislative limits is wise would be contrary to our constitutional system and substitute judicial opinion for the legislative will. The only question in this court is whether the legislature had the power to establish the regulation.

The legislation to that effect in many of the States shows that the opinion is extensively held that a general prohibition of sale of malt liquors whether intoxicating or not is necessary to suppress the sale of intoxicants.

In the exercise of its police power to prohibit the sale of intoxicants a State may include within the prohibition malt and other liquors sold under the guise of innocent beverages.

100 Mississippi, 650, affirmed.

THE facts, which involve the constitutionality of a statute of Mississippi which includes the prohibition of the sale of malt liquors, are stated in the opinion.

*Mr. Marcellus Green, Mr. George B. Lancaster, Mr. G. W. Green* and *Mr. Marcellus Green, Jr.,* for plaintiffs in error:

Chapter 113, § 1, as interpreted by the Supreme Court of the State of Mississippi in so far as it regulates the

movement of Poinsetta in interstate commerce, violates the Federal Constitution. *Leisy* v. *Hardin*, 135 U. S. 100; *Bowman* v. *Chicago & Northwestern Railway*, 125 U. S. 465; *In re Rahrer*, 140 U. S. 35; *Brennan* v. *Titusville*, 153 U. S. 289; *Scott* v. *Donald*, 165 U. S. 95; *Vance* v. *Vandercock*, 170 U. S. 441; *Rhodes* v. *Iowa*, 170 U. S. 411; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Telegraph Co.* v. *Philadelphia*, 190 U. S. 162; *American Express Co.* v. *Iowa*, 196 U. S. 133; *Brewing Co.* v. *Crenshaw*, 198 U. S. 21; *Cook* v. *Marshall County*, 196 U. S. 261; *Foppiano* v. *Speed*, 199 U. S. 504; *South Carolina* v. *United States*, 199 U. S. 461; *Rearick* v. *Pennsylvania*, 203 U. S. 508; *Express Co.* v. *Kentucky*, 214 U. S. 218; *Louisville & Nashville R. R.* v. *Cook Brewing Co.*, 223 U. S. 81.

Said statute as interpreted by the Supreme Court of the State of Mississippi, in so far as it deprives plaintiff in error of the right to sell Poinsetta, is in conflict with the Fourteenth Amendment in that thereby it attempts to deprive plaintiff in error of its property and liberty without due process of law. *Lochner* v. *New York*, 198 U. S. 56; *Harper* v. *California*, 155 U. S. 662; *Hudson Water Co.* v. *McCarter*, 209 U. S. 355; *Welch* v. *Swasey*, 214 U. S. 103.

The cases cited by defendant in error can all be distinguished.

*Mr. Edward Mayes, Mr. Robert B. Mayes* and *Mr. Jas. R. M'Dowell*, for defendant in error.

The record shows that Poinsetta, though not intoxicating, and containing no alcohol, is a malt product and contains 5.73 per cent. of malt out of 9.55 per cent. of solid matter, the balance being water. Poinsetta is sold as a beverage and, as such, it is a malt liquor within the meaning of the prohibition statute of Mississippi. The fact that the statute enumerates malt liquor as one of those prohibited, brings Poinsetta within its terms, and it makes

no difference whether it is alcoholic or intoxicating or not. *Fuller* v. *Jackson*, 52 So. Rep. 876; *Reyfelt* v. *State*, 73 Mississippi, 415; *Edwards* v. *Gulfport*, 49 So. Rep. 620; *Elder* v. *State*, 50 So. Rep. 370.

The statute prohibits the sale of malt liquors and that is conclusive. In enacting a police regulation it may be found necessary to include within the purview of the statute certain acts innocent and not in themselves the subject of police regulation, where the inclusion of such acts is necessary in the opinion of the legislature to make effective the police regulation. *Pennell* v. *State*, 113 N. W. Rep. 115; *Marks Case* (Ala.), 48 So. Rep. 864; *United States* v. *Cohn*, 52 S. W. Rep. 38.

Poinsetta is a malt liquor and is therefore prohibited, regardless of intoxicating properties. If the liquor sold was a malt liquor, it is not necessary for a jury to determine whether it was or was not intoxicating in fact. *State* v. *O'Connell*, 50 Atl. Rep. 59; *Guilbert* v. *Kauffman*, 67 N. E. Rep. 1062; *Lemly* v. *State*, 20 L. R. A. (O. S.) 645; *Netso* v. *State*, 1 L. R. A. 825; *Commonwealth* v. *Fowler*, 33 L. R. A. (O. S.) 839; *State* v. *Fargo Bottling Works*, 26 L. R. A. (N. S.) 872.

The State, in the exercise of its police powers, has an undoubted right to take into consideration not only the effect of the article sold upon the life and health of the individual, but also the fact that it may be used readily and conveniently as a cover to violations of the law. *Luther* v. *State*, 20 L. R. A. (N. S.) 1146; *Lawrence* v. *Monroe*, 10 L. R. A. 520; *State* v. *Frederickson*, 6 L. R. A. (N. S.) 186; *State* v. *O'Connell* (Me.), 58 Atl. Rep. 59; *Feibelman* v. *State* (Ala.), 30 So. Rep. 384. See also Black on Intoxicating Liquors, § 43; *In re Spickler*, 43 Fed. Rep. 653; *State* v. *York*, 74 N. H. 125; *State* v. *Fredrickson*, 115 Am. St. Rep. 295; *State* v. *Conner*, 99 Maine, 61; *United States* v. *Ducourneau*, 54 Fed. Rep. 138.

Even if Poinsetta cannot be used as a subterfuge for beer because it is distinctive in taste, color and odor and has the name blown in the bottle, yet it may be used as a substitute; being a malt drink it may gratify the craving for malt liquors or it may lead to the creation of a desire for malt liquors. *Walker* v. *Dailey*, 101 Ill. App. 575; *Holcomb* v. *State*, 49 Ill. App. 73; *Caldwell* v. *State*, 112 Georgia, 135; *Campbell* v. *Thomasville*, 64 S. E. Rep. 814; *State* v. *Auditor*, 68 Oh. St. 635; *Smith* v. *State*, 49 So. Rep. 115.

The State has not exceeded its police powers in prohibiting the sale of malt liquors which are non-intoxicating, and the act does not violate the due process clause of the Fourteenth Amendment. *Chicago, B. & Q. R.* v. *McGuire*, 219 U. S. 549.

In determining whether or not a State has exceeded its police powers this court will never overthrow a statute of a State unless the action of the legislature was arbitrary and had no reasonable relation to a purpose which it was competent for the Government to effect. *Otis* v. *Parker*, 187 U. S. 606; *Ah Sin* v. *Wittman*, 198 U. S. 509; *Lemieux* v. *Young*, 211 U. S. 489; *Kidd et al.* v. *Musselman*, 217 U. S. 461; *Booth* v. *Illinois*, 184 U. S. 425.

A statute which can confiscate property rights and destroy business must be justifiable upon the suggested reasons of public benefit; but whether justifiable or not, are reasons that address themselves exclusively to legislative wisdom. Cooley, Const. Lim. (7th ed.), 150 and 849; Black on Intoxicating Liquors, § 34; *Lawrence* v. *Monroe* (Kansas), 10 L. R. A. 520.

In enacting a police regulation it may be found necessary to include within the purview of the statute certain acts innocent and not in themselves the subject of police regulation, where the inclusion of such acts is necessary, in the opinion of the legislature, to make the police regulation effective. *Pennell* v. *State*, 141 Wisconsin, 35;

*Booth* v. *Illinois*, 184 U. S. 425; *Otis* v. *Parker*, 187 U. S. 606; *State ex rel.* v. *Aiken*, 26 L. R. A. 345; *Stone* v. *Mississippi*, 101 U. S. 814; *Mugler* v. *Kansas*, 123 U. S. 660; *Barbier* v. *Connolly*, 113 U. S. 27.

*Lochner* v. *New York*, 198 U. S. 56; *Hooper* v. *California*, 155 U. S. 662; *Powell Case*, 127 U. S. 678; *Dobbins* v. *Los Angeles*, 195 U. S. 224, all present entirely different cases and do not sustain the contention of plaintiff in error.

The question of interstate commerce is not involved. The Wilson Act is not necessarily involved in this litigation, for the reason that no attempt has been made to bring this beverage into the State.

The container, or box in which these bottles are packed, and not the single bottle itself is the original package. 17 A. and E. Enc. Law (2d ed.), 294; Black on Intoxicating Liquors, § 75; *Harrison* v. *State*, 10 So. Rep. 30; *Keith* v. *State*, 8 So. Rep. 353; *Cook* v. *Marshall Co.*, 196 U. S. 261.

Mr. Justice Hughes delivered the opinion of the court.

This is an action for breach of contract. The Purity Extract and Tonic Company (plaintiff below), a Tennessee corporation, is the manufacturer of a beverage called "Poinsetta," and in November, 1910, it made an agreement with the defendant Lynch for the purchase of the article by him on stated terms during the period of five years. The agreement contemplated resales by the defendant in Hinds County, Mississippi, to the making of which he was to devote his best efforts. It was provided that he was to sell only in that county where he was to have the exclusive right of sale for which he was to pay to the plaintiff the sum of five hundred dollars within five days after the making of the contract. It was to recover this amount that the action was brought, the defendant having repudiated the agreement at the outset

upon the ground that on coming to Mississippi he found it to be unlawful to sell "Poinsetta" in that State. The trial court sustained the defense of illegality and its judgment was affirmed by the Supreme Court of Mississippi. 100 Mississippi, 650.

The statute which the agreement has been held to violate is Chapter 115 of the Laws of Mississippi of 1908, § 1, p. 116, which includes in its prohibition the sale of malt liquors.

The case was tried upon an agreed statement of facts in which the characteristics of "Poinsetta" are set forth at length. In substance, the statement is that it is composed of pure distilled water to the extent of 90.45 per cent., the remaining 9.55 per cent. being solids derived from cereals, "which are in an unfermented state and are wholesome and nutritious"; that "it contains 5.73% of malt and is sold as a beverage"; that it does not contain either alcohol or saccharine matter, being manufactured in such a manner under a secret formula obtained from German scientists as to bring neither into its composition; that it is not intoxicating; that its taste and odor are distinctive; that its appearance is such that "it would not probably be mistaken for any intoxicating liquor"; and that it "cannot be employed as a subterfuge for the sale of beer because it is bottled in a distinctive way and its name blown in each bottle which contains the beverage." It is further agreed that "the United States Government does not treat Poinsetta as within the class of intoxicating liquors and does not require anything to be done with reference to its sale."

The state court, following its decision in *Fuller* v. *City of Jackson*, 97 Mississippi, 237, construed the statute as prohibiting the sale of all malt liquors whether in fact intoxicating or not, and this construction of the state law is binding here. The court said: "Poinsetta may or may not be an intoxicant, but it is a malt liquor, and as such

is prohibited from being sold in this State. The prohibition law can not be made effective unless it excludes all subterfuges." (100 Mississippi, 650, 657.)

The agreed statement of facts also contained the following: "Poinsetta is put up in bottles at Chattanooga, Tennessee, and is shipped in bottles, each separate and apart from the other, placed in a case to which they are in no way attached, and which is done merely to prevent breakage of the bottles in transit. The case is not fastened with nails or other device but merely closed. The bottles so contained are shipped in interstate commerce from Chattanooga, Tennessee, and are to be received under the contract by the consignee in Mississippi in the same condition as when bottled, and are to be sold as each several package. There is to be no retail sale under such right by said Lynch in the State of Mississippi, but all shipments are to be made direct either to said Lynch, or to other persons who shall desire to purchase said drink, and are to be delivered to said purchasers of said bottles in precisely the same shape as prepared in Tennessee, and said Poinsetta is still contained in the original package at the time it will be offered for sale in Mississippi by the purchaser thereof in the original package which was sent from Tennessee through Alabama into Mississippi."

The plaintiff brings this writ of error assailing the validity of the statute, as construed by the state court, (1) as an unconstitutional interference with interstate commerce and (2) as depriving the plaintiff of its liberty and property without due process of law.

*First.* We do not find that the decision of the state court involves a denial of any right incident to interstate commerce. The contract, it is true, provided for purchases by the defendant from the plaintiff, the deliveries to be made at Chattanooga, Tennessee, for transportaton to the defendant at Jackson, Mississippi. So far as appears, however, there were no purchases and no deliveries. The

reason obviously is that the agreement looked to resales by the defendant in Hinds County. Finding that such sales would be against the local law, he refused performance *in limine*. The state court did not deny to the plaintiff the right to sell to the defendant or to have its article transported and delivered to the defendant in interstate commerce. *Rhodes* v. *Iowa*, 170 U. S. 412; *Louisville & Nashville R. R. Co.* v. *Cook Brewing Co.*, 223 U. S. 70, 82. It had no such question before it. This suit was brought to recover the amount which the defendant promised to pay for the exclusive right of making sales in Hinds County. In this aspect, the validity of the contract under the state law was to be judged by its provisions for sales within the State. The contract contained no suggestion that these sales were to be limited to those made in the original packages imported. Its provisions were broad enough to include other sales and hence encountered the local statute as applied to transactions outside the protection accorded by the Federal Constitution to interstate commerce.

Nor is the contention of the plaintiff aided by the agreed statement of facts. This statement in one of its clauses says that there was to be "no retail sale" by the defendant. Whatever this may mean in the light of the words of the contract which contained no such limitation, it is clear that the defendant was not debarred from selling the bottles separately. On the contrary, the argument for the plaintiff is that "each bottle," brought into the State in cases as described, constitutes "an original package." As to this, it is to be noted that by the terms of the contract the agreed prices on the purchases by the defendant from the plaintiff were per cask containing ten dozen bottles and per case containing six dozen bottles respectively. In short, the plain purpose was that the defendant was to buy in casks and cases, and in the light of the transactions thus contemplated, and, as they would

be normally conducted, between the plaintiff as manufacturer and the defendant as local dealer it can not be said that each separate bottle which he might sell in Hinds County must be considered as an original package so as to save the sale from the interdiction of the state law. *May* v. *New Orleans,* 178 U. S. 496; *Austin* v. *Tennessee,* 179 U. S. 343; *Cook* v. *Marshall County,* 196 U. S. 261. We are, therefore, not called upon to consider whether or not the Wilson Act (August 8, 1890, c. 728; 26 Stat. 313) governs in the case of such an article as "Poinsetta" and, confining ourselves to the issue presented, we express no opinion upon that point.

*Second.* Treating the matter then as one of local sales, the question is whether the prohibitory law of the State as applied to a beverage of this sort is in conflict with the Fourteenth Amendment.

That the State in the exercise of its police power may prohibit the selling of intoxicating liquors is undoubted. *Bartemeyer* v. *Iowa,* 18 Wall. 129; *Boston Beer Company* v. *Massachusetts,* 97 U. S. 25; *Mugler* v. *Kansas,* 123 U. S. 623; *Kidd* v. *Pearson,* 128 U. S. 1; *Crowley* v. *Christensen,* 137 U. S. 86. It is also well established that, when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction separately considered is innocuous it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the Government. *Booth* v. *Illinois,* 184 U. S. 425; *Otis* v. *Parker,* 187 U. S. 606; *Ah Sin* v. *Wittman,* 198 U. S. 500, 504; *New York ex rel. Silz* v. *Hesterberg,* 211 U. S. 31; *Murphy* v. *California,* 225 U. S. 623. With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that

the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended.  To hold otherwise would be to substitute judicial opinion of expediency for the will of the legislature, a notion foreign to our constitutional system.

Thus in *Booth* v. *Illinois, supra,* the defendant was convicted under a statute of that State which made it a criminal offense to give an option to buy grain at a future time.  It was contended that the statute as interpreted by the state court was "not directed against gambling contracts relating to the selling or buying of grain or other commodities, but against mere options to sell or buy at a future time without any settlement between the parties upon the basis of differences, and therefore involving no element of gambling."  The argument was that it directly forbade the citizen "from pursuing a calling which, in itself, involves no element of immorality."  This court, in sustaining the judgment of conviction, said: "If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils can not be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law."  It must be assumed, it was added, that, "the legislature was of opinion that an effectual mode to suppress gambling grain contracts was to declare illegal all options to sell or buy at a future time," and the court could not say that the means employed were not appropriate to the end which it was competent for the State to accomplish.  (*Id.* pp. 429, 430.)

The same principle was applied in *Otis* v. *Parker, supra,*

which dealt with the provision of the constitution of California that all contracts for the sale of shares of the capital stock of any corporation, on margin, or to be delivered at a future day, should be void, and that any money paid on such contracts might be recovered. The objection urged against the provision in its literal sense was that the prohibition of all sales on margin bore no reasonable relation to the evil sought to be cured, but the court upheld the law, being unwilling to declare that the deep-seated conviction on the part of the people concerned as to what was required to effect the purpose could be regarded as wholly without foundation. (*Id.*, pp. 609, 610.)

A strong illustration of the extent of the power of the State is found in *Silz* v. *Hesterberg*, 211 U. S. 31. The State of New York by its Forest, Fish and Game Law prohibited the possession of certain game during the close season. The statute covered game coming from without the State. It appeared that Silz was charged with the possession of plover and grouse which had been lawfully taken abroad during the open season and had been lawfully brought into the State; that these game birds were varieties different from those known as plover and grouse in the State of New York; that, although of the same families, in form, size, color and markings they could readily be distinguished from the latter; and that they were wholesome and valuable articles of food. This court affirmed the conviction, saying (p. 40): "It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, and prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the legislature of the State is authorized to pass measures for the protection of the

people of the State in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted." It was pointed out that the prohibition in question had been found to be expedient in several States "owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another State or country."

It was competent for the legislature of Mississippi to recognize the difficulties besetting the administration of laws aimed at the prevention of traffic in intoxicants. It prohibited, among other things, the sale of "malt liquors." In thus dealing with a class of beverages which in general are regarded as intoxicating, it was not bound to resort to a discrimination with respect to ingredients and processes of manufacture which, in the endeavor to eliminate innocuous beverages from the condemnation, would facilitate subterfuges and frauds and fetter the enforcement of the law. A contrary conclusion logically pressed would save the nominal power while preventing its effective exercise. The statute establishes its own category. The question in this court is whether the legislature had power to establish it. The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied simply because some innocent articles or transactions may be found within the proscribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat.

That the opinion is extensively held that a general prohibition of the sale of malt liquors, whether intoxicating or not, is a necessary means to the suppression of trade in intoxicants, sufficiently appears from the legislation of other States and the decision of the courts in its construction. *State* v. *O'Connell,* 99 Maine, 61; 58 Atl. Rep. 59; *State* v. *Jenkins,* 64 N. H. 375; *State* v. *York,* 74 N. H. 125, 127; *State ex rel. Guilbert* v. *Kauffman,* 68 Oh.

St. 635; 67 N. E. Rep. 1062; *Luther* v. *State* (Nebraska), 20 L. R. A. (N. S.) 1146; *Pennell* v. *State*, 141 Wisconsin, 35; 123 N. W. Rep. 115. We cannot say that there is no basis for this widespread conviction.

The State, within the limits we have stated, must decide upon the measures that are needful for the protection of its people, and, having regard to the artifices which are used to promote the sale of intoxicants under the guise of innocent beverages, it would constitute an unwarrantable departure from accepted principle to hold that the prohibition of the sale of all malt liquors, including the beverage in question, was beyond its reserved power.

*Judgment affirmed.*