## NATIONAL EMPLOYMENT EXCHANGE v. GERAGHTY.

### No. 428.

Circuit Court of Appeals, Second Circuit.
July 29, 1932.

Arthur J. W. Hilly, Corp. Counsel, of New York City (Vine H. Smith, Francis X. Hanley, and J. Joseph Lilly, all of New York City, of counsel), for appellant.

Gleason, McLanahan, Merritt & Ingraham, of New York City (Walter Gordon

Merritt, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The District Judge said that, while it is clear under the decision of the Supreme Court in Brazee v. Michigan, 241 U. S. 341, 36 S. Ct. 561, 60 L. Ed. 1034, Ann. Cas. 1917C, 522, that the business of an employment agency is subject to a reasonable regulation, such regulation does not extend to price fixing. Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327.

■ The provision of the New York act which is challenged in this suit is section 186, General Business Law, which makes the charge of employment agencies to employees contingent upon success in obtaining employment for them. It provides that, where "a person applying for help or employment of a domestic or commercial employment agency shall not accept help or obtain employment through such agency, then the licensed person conducting such agency shall on demand repay the full amount of the said fee, allowing three days' time to determine the fact of the applicant's failure to obtain help or employment. * * *" No attempt was made in this suit to test the validity of section 185, which fixed gross fees charged to applicants for employment at certain percentages of their wages or salary. Section 185, if invalid under the Supreme Court decisions, is severable from the rest of the act. In our opinion, the provisions making employment contingent upon success come within the ban of no decision of the Supreme Court, and are valid as reasonable regulations.

In Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 562, 60 L. Ed. 1034, Ann. Cas. 1917C, 522, a statute of the state of Michigan was under consideration which prohibited employment agencies from sending applicants to an employer when the latter had not applied for labor. The purpose of the act was stated to be "the licensing, bonding, and regulation of private employment agencies, the limiting of the amount of the fee charged by such agencies, the refunding of such fees in certain cases, the imposing of obligations on persons, firms, or corporations which have induced workmen to travel in the hope of securing employment, charging

the Commissioner of Labor with the enforcement of this act, and empowering him to make rules and regulations, and fixing penalties for the violation hereof."

The Supreme Court affirmed a conviction for sending an applicant to an employer who had not applied for labor, and held that a state had power to require licenses for employment agencies and to prescribe reasonable regulations to be enforced according to the legal discretion of a commissioner, but declined to pass on the validity of section 5 of the act which provided that the entire fee for procuring one situation should not exceed 10 per cent. of the first month's wages, half of which must in certain contingencies be returned. The charge under which the conviction was obtained was based on section 6 forbidding an employment agency to send an applicant to an employer who had not called for labor. This was held to be severable from section 5 without destroying the act.

In Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973, a law of the state of Washington was dealt with, making it unlawful for any employment agency to demand from a person seeking employment any fee whatever for furnishing him with the employment. This was held by a majority of the court to go beyond the power to regulate and to violate the Fourteenth Amendment. Four of the Justices dissented from the above decision, and Justice Brandeis adverted at length to the well-known abuses of employment agencies and the need of employees for protection. It is to be noted that in Adams v. Tanner, the statute entirely prohibited employment agencies from receiving fees from workers.

In Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327, a statute of New Jersey was under consideration requiring licenses for the conduct of employment agencies and fixing a schedule of fees for services which might be charged only with the approval of the Commissioner of Labor. This act was held unconstitutional by five of the Justices, Justice Sanford concurring only upon what he regarded as the controlling authority of the decision in Tyson v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236, where he had dissented. The majority held that the business of an employment agency was not so affected with a "public interest" as to permit the fixing of fees, and distinguished Brazee v. Michigan because there the court

did not rule concerning the validity of section 5 which attempted to limit the fees to be charged and because the power to require a license to regulate the conduct of the business was distinct from the power to fix prices. Justice Stone, writing for the minority, discussed the abuses in the business of employment agencies, and adverted to the fact that such provisions for fixing fees had been adopted in a majority of the states and in Canada.

The Supreme Court in the foregoing decisions held (1) that the employment agency business is one which may be regulated; (2) that prohibition of any charge to the employee by the agency was not within the scope of permissible regulation; (3) that the amount of the fees to be charged to employees could not be fixed. The question before us is whether a statute requiring that the charge be contingent upon success in procuring employment passes the bounds of reasonable regulation. The effect of such a statute is to make the cases where employment is secured bear the cost of unsuccessful effort. There is no prohibition here, and section 185 limiting the percentage of wages which may be charged, if unlawful as a price fixing arrangement, is a severable clause which may be disregarded like the similar provision of section 5 of the Michigan act in Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034, Ann. Cas. 1917C, 522.

The powerful dissents in Adams v. Tanner, Tyson v. Banton, and Ribnik v. McBride, and the narrow margin by which the views of the majority prevailed, warn us that the doctrines of those cases are not likely to extend beyond the precise facts presented. Moreover, it is obvious, as well as amply demonstrated, that employees (even of the "white collar" class of the present case), have a bargaining power in general far weaker than that of employers. They are often, as in these very times, in a desperately poor condition, ready to pay almost anything possible in the hope of securing employment. Under such circumstances it is easy to delude them by false hopes and to get their money where there is little or no chance of doing them any service. To require success in securing employment for an applicant, not only prevents much fraud and oppression, but benefits a class both needy and very numerous. It also greatly stimulates activity and diligence on the part of an agency by substituting for a mere general desire to promote the reputation of the agency for successful effort, a direct interest in the retention of the employee's deposit, and fear of losing it.

It is well known that the fees of brokers engaged in promoting the purchase and sale of lands and leaseholds are almost invariably contingent upon success. It seems quite incredible that a codification of a business practice, adopted largely in the interest of fair dealing, can be regarded as an unlawful usurpation of legislative power.

Undoubtedly under the New York act and that of many other states the successful cases pay for the unsuccessful and the employment agency takes the risk of getting enough jobs for workers to enable it to carry its business. Continuance of the business, as in fire, life, or accident insurance, must depend on the capacity of those managing it to adjust their charges to the contingencies involved.

It has been suggested that "clerical and executive workers" do not need any legislative protection and therefore cannot properly be included in section 186. This obviously is not true of "clerical workers," and we have no reason to suppose that the term "executive workers" related to officials of railroads and industrial corporations, but rather to the numberless lesser "executive workers" who naturally seek employment through commercial agencies. The classification of the statute covering generally "applicants for employment" is not arbitrary, but conforms in respect to the very matters criticized to business practice in other vocations. If some few agencies having little need of regulation may suffer loss through it, this consideration is not enough to invalidate provisions generally reasonable. Euclid v. Ambler Co., 272 U. S. at pages 388, 389, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Purity Extract & Tonic Co. v. Lynch, 226 U. S. at page 204, 33 S. Ct. 44, 57 L. Ed. 184.

The order is reversed, and the cause remanded, with directions to dismiss the bill.