TWO GUYS FROM HARRISON, INC., A CORPORATION, PLAINTIFF, AND CHANNEL LUMBER CO., A CORPORATION, INTERVENING PLAINTIFF, v. DAVID D. FURMAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANT AND R. H. MACY CO., INC., A CORPORATION, R. H. MACY CO., INC., TRADING AS L. BAMBERGER & CO., AND GARDEN STATE PLAZA, INC., A CORPORATION, INTERVENING DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 27, 1959.

314

316

*Messrs. Clancy & Hayden* (*Mr. John J. Clancy,* appearing; *Mr. David Stoffer* and *Mr. Joseph M. Jacobs* on the brief), attorneys for plaintiff.

*Messrs. Stein & Feinseth* (*Mr. Julius Stein,* appearing), attorneys for intervening plaintiff.

*Mr. Walter H. Jones,* attorney for intervening defendants.

*Mr. David D. Furman,* Attorney General of New Jersey (*Mr. David M. Satz, Jr.,* Deputy Attorney General, appearing; *Mr. Robert S. Miller* on the brief), *pro se.*

SCHERER, J. S. C. The complaint in this case was filed by the first named plaintiff, in lieu of prerogative writs, to test the constitutionality of *L.* 1959, *c.* 119 (*N. J. S.* 2A:171–5.8 *et seq.*), and for a judgment declaring it to be invalid. A permanent injunction against the enforcement of any of its provisions is requested. The other plaintiff was permitted to intervene, and its complaint seeks similar relief. The matter comes on for hearing on the motion of both plaintiffs for a summary judgment. It has been stipulated that the Attorney General's opposition to the motion shall be considered as a motion for a judgment of dismissal of the complaints on the pleadings, pursuant to *R. R.* 4:12–3.

*L.* 1959, *c.* 119 is another act dealing with the problem of commercial activity on Sunday within this State. The

history of this type of legislation is reviewed in *State v. Maier*, 13 *N. J.* 235, 261 (1953). The 1959 statute purports to supplement *N. J. S.* 2*A*:171–1, which provides as follows:

> "*Worldly employment or business prohibited*
> No worldly employment or business, except works of necessity and charity, shall be performed or practiced by any person within this state on the Christian Sabbath, or first day of the week, commonly called and hereinafter designated as Sunday."

Observable is the fact that no punishment is provided for violation of this statute. Its predecessor, *R. S.* 2:207–1, did contain a penalty clause, but when *Title* 2 was revised in 1951 this provision was not re-enacted. In the foreword to *Title* 2*A,* it is stated:

> "The general object of the Revision of the Sunday laws (*N. J. S.* 2*A*:171–1 to 2*A*:171–12) was not to make broad changes in substance, but rather to eliminate obsolete provisions. *It was intended to leave municipalities with the power, they theretofore had, to control and regulate Sunday activity.*" (Emphasis supplied)

The Supreme Court, in *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468 (1956), held that the removal of the penalty clause changed the character of the statute from a penal statute to an expression of public policy only. *Gundaker Central Motors v. Gassert,* 23 *N. J.* 71, 77 (1956). Neither the revision nor the decision in *State v. Fair Lawn Service Center, Inc., supra,* operated to modify the long-standing public policy of this State as presently expressed in *N. J. S.* 2*A*:171–1 against worldly employment or business on Sunday, except works of necessity and charity. A clear statement of this policy is found in *Auto-Rite Supply Co. v. Woodbridge Twp.,* 25 *N. J.* 188 (1957), where Justice Burling, speaking for the Supreme Court, said at *p.* 192:

> "The legislative policy of this State to set aside the first day of the week as one of rest and relaxation is a declaration of long standing. See *State v. Maier,* 13 *N. J.* 235, 261 (1953). Our legislative pronouncements have been in keeping with the object to be

achieved by prohibiting all 'worldly employment or business' and are an extension upon the design of the English statute of 29 *Car. II*, c. 7 (1676), which merely prohibited one from engaging in the labor of his 'ordinary calling.' *Reeves v. Butcher*, 31 *N. J. L.* 224, 225 (*Sup. Ct.* 1865). The legislative purpose today is comparable to that of 146 years ago when Justice Pennington commented: 'It is to prevent the public exposure of goods, merchandise, etc., for sale on Sunday, and selling them in consequence thereof,' *Crocket v. Vanderveer*, 3 *N. J. L.* 856, 857 [*Reprint* 422, 424] (*Sup. Ct.* 1811), and thereby provide an escape from the market place for merchant and customer alike. Sunday is to be a day of rest, and this has been 'the general and immemorial policy of the state.' * * *."

Certain acts are permitted by *N. J. S.* 2A:171–2, and others may secure sanction from the voters of the municipalities through referendum under the provisions of *N. J. S.* 2A:171–6.

Thus, while in the revision of *R. S.* 2:207–1 into *N. J. S.* 2A:171–1 the penalty provisions were removed, this did not change the public policy of the State against exposure and sale of goods on Sunday but left to the various municipalities the enforcement thereof by their own ordinances. As was said in *Auto-Rite Supply Co. v. Woodbridge Twp., supra, N. J. S.* 2A:171–1 is not the source of the power of municipalities to enact Sunday closing ordinances. This power they already had in the omnibus provisions of the Home Rule Act (*R. S.* 40:48–2), which enables them to enact ordinances for the preservation of public health, safety and welfare of their citizens. Numerous municipalities have enacted ordinances within the framework of *N. J. S.* 2A:171–1, but many have not.

In 1958, the Legislature enacted *L.* 1958, c. 138 (*N. J. S.* 2A:171.5 *et seq.*), which prohibited the sale of certain merchandise throughout the State on Sunday and imposed penalties for violations. By its population limitations, three counties were eliminated from the statute's benefits. The statute was held to be unconstitutional in *Sarner v. Union Tp.*, 55 *N. J. Super.* 523 (*Law Div.* 1959). This provision was eliminated from the present law. Therefore, the principal

reason which prompted the striking down of the 1958 statute is not applicable to the present act.

The latter act (which is *N. J. S.* 2A:171–5.8 to 2A:171–5.18) was approved on June 17, 1959. It prohibits the sale on Sunday of certain merchandise described therein and provides penalties for violations. *Section* 4 of the act states that it shall be construed "as an additional remedy to secure proper Sunday observance." *Section* 5 provides that the act shall take effect immediately, "but shall not become operative in any county unless and until the voters of the county shall determine by referendum held pursuant to this act that the same shall apply therein." The referendum provisions are found in *sections* 6 through 11. *Section* 6 states that, if not less than 2,500 registered voters in any county shall sign a petition requesting that there shall be submitted to the voters of that county a public question to the effect that the act shall apply in said county, and file the petition with the county clerk at least 45 days prior to a general election, the question shall be submitted to the voters in said county at such election.

In 15 counties of the State, petitions were filed and the question was placed on the ballot and voted upon at the general election held November 3, 1959. In 12 of the 15 counties, the voters approved the application of the statute to their counties. In three, they disapproved. Plaintiffs argue that, regardless of the fact that the citizens of 12 counties voted—in most instances by substantial majorities —to have the act apply in their counties so that they might receive the benefits thereof, this expression of public opinion should be disregarded.

Plaintiffs contend that the statute is unconstitutional because (1) it represents an unlawful delegation to the people of legislative power; (2) the classification of merchandise prohibited by, and described in, the statute is arbitrary, capricious and, therefore, unlawful; and (3) the referendum is illegal, since it, too, is arbitrary and discriminatory. These points will be dealt with in the order stated.

## I.

 In considering the constitutionality of a statute, two basic principles must be borne in mind—first, that there is a strong presumption in favor of constitutionality, and secondly, that if the statute under attack admits of two constructions, one of which will render it invalid and the other valid, the interpretation sustaining validity will be adopted. *In re Loch Arbour,* 25 *N. J.* 258, 264 (1957); *General Electric Co. v. Passaic,* 28 *N. J.* 499, 510 (1958); *Clifton v. Passaic County Board of Taxation,* 28 *N. J.* 411, 422 (1958); *State v. Monroe,* 30 *N. J.* 160, 165 (1959). And, the burden of proving unconstitutionality is, as pointed out in *N. J. Restaurant Assn. v. Holderman,* 24 *N. J.* 295, 300 (1957), an extremely formidable one. In considering an attack upon the constitutionality of a statute, our Supreme Court has said in *Lane v. Holderman,* 23 *N. J.* 304, 323 (1957), that the statute should be interpreted by a mind sympathetic to its aims which recognizes the difficulties inherent in formulating a precise expression of legislative intent in light of the diversity of circumstances to be covered. It must also be presumed that the Legislature acted with integrity and with an honest purpose to keep within constitutional limits. 2 *Sutherland, Statutory Construction* (3d ed. *Horack* 1943), *sec.* 4509. If it keeps within its constitutional powers, the courts will not pass judgment upon the wisdom of its enactments. *State v. Garden State Racing Assn.,* 136 *N. J. L.* 173 (*E. & A.* 1947).

Plaintiffs argue that the reasons which resulted in *L.* 1958, *c.* 138's being held unconstitutional apply with equal force to the present statute and require that it, too, be struck down. A comparison of the two statutes discloses that the legislative approach to the problem in 1959 was entirely different than in 1958. In the 1958 act, by the express provisions thereof, the citizens of three counties—Atlantic, Cape May and Ocean—were excluded from its benefits. The present act does not exclude any of the citizens of any of

the counties of the State from the right to participate in its benefits, but gives to all citizens throughout the State the right to say for themselves on a county-wide basis whether the act should be applicable to them. Thus, the holding of the *Sarner* case is not dispositive of the issues here.

Sales of merchandise on Sunday, including those items specifically enumerated in the 1959 act, are, and were, illegal prior to the passage of the 1959 act by virtue of *N. J. S.* 2A:171-1. However, since many municipalities have not adopted appropriate implementing ordinances, the existing statute has been widely disregarded. The 1959 act, in counties where the voters have approved, now fixes penalties for certain sales, which penalties local law officials will be obliged to enforce. Thus, as to the merchandise referred to in the statute, in those counties where the voters have acted favorably, local ordinances against Sunday sales are superseded by the state law, if it is constitutional. This, the Legislature lawfully may do, since there is no inherent right of local self-government beyond the control of the State, and municipalities are but creations of the State, limited in their powers and capable of exercising only those powers of government granted to them by the Legislature. *Wagner v. Newark,* 24 *N. J.* 467, 474 (1957).

The right of the Legislature to pass statutes regulating the sale of goods on Sunday is not and, indeed, cannot be challenged. See *Gundaker Central Motors v. Gassert, supra.* But, the plaintiffs contend that the present statute cannot be sustained because it does not apply equally to all persons similarly situated and it fixes penalties for the sale of certain merchandise, but not for others.

The State has the power in the interest of common good to enact all manner of laws reasonably designed for the protection of public health, welfare, safety, and morals. This is generally called the police power of the State. *Gundaker Central Motors v. Gassert, supra,* 23 *N. J.* at *page* 78. As this case points out, the exercise of this power may cause individual hardship, or even limit the freedom

of individual action, but so long as there is some degree of reasonable necessity to protect legitimate interests of the public, and the regulation resulting from the use of the power is not arbitrary or oppressive, the greater good for the greater number must prevail, and individual inconveniences must be suffered as the price to be paid for living in a well-ordered society. And, it is also recognized that the police power extends beyond health, morals, and safety to protect the well-being and tranquility of a community and to prohibit acts or things reasonably thought to bring evil or harm to its people. *Kovacs v. Cooper,* 336 *U. S.* 77, 83, 69 *S. Ct.* 448, 93 *L. Ed.* 513, 520 (1949).

The exercise of the power, of course, must be within constitutional limitations. This power, however, is broad and, as was stated in *Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405, 414 (1952), "does not lend itself to expression in terms of a definitive formula that will automatically resolve every case, for its quality and scope are commensurate with the public exigencies arising from ever-changing social and economic conditions." The public right of reasonable regulation for the common good and welfare is denominated police power and generally the authority coincides with the public need.

The plaintiffs say, however, that, assuming this to be true, this statute is unconstitutional because it represents an unlawful delegation to the people of the law-making power, *i. e.,* that where a law is left to popular vote to pronounce whether it shall or shall not take effect, the law then is not one made by the law-maker, but by the voters, and is unconstitutional. *City of Paterson v. Society for Establishing Useful Manufactures,* 24 *N. J. L.* 385 (*Sup. Ct.* 1854); *State ex rel. Sandford v. Court of Common Pleas of Morris,* 36 *N. J. L.* 72 (*Sup. Ct.* 1872). Local option laws dependent upon popular referendum have a long and oft-approved history in this State. *City of Paterson v. Society for Establishing Useful Manufactures, supra.* See also, *Attorney-General v. McGuinness,* 78 *N. J. L.* 346 (*E. & A.* 1910); *In re*

*Petition of Cleveland, Mayor,* 52 *N. J. L.* 188 (*E. & A.*
1889); *Rutherford Lodge No. 547 v. Hock,* 1 *N. J. Super.*
223 (*App. Div.* 1949). Many others might be cited.

. Most of the arguments raised by the plaintiffs against
constitutionality were raised in the leading case on this sub-
ject in New Jersey, *Paul v. Gloucester County,* 50 *N. J. L.*
585 (*E. & A.* 1888). In that case, the Legislature passed
a statute to regulate the sale of intoxicating liquor. The
statute authorized a vote to determine whether or not in-
toxicating or brewed liquor should be sold within the counties,
and in those counties where the majority of the voters were
against such sale it was provided that no licenses to sell
liquor should be issued. The statute was attacked on the
ground, among others, that this constituted a delegation of
the law-making power to the voters and that such a delega-
tion was unconstitutional. It was also argued, with respect
to another portion of the statute, which gave municipalities
the right to fix the amount of license fee to be charged, that
this was an unlawful grant of power. In rejecting both of
these arguments and upholding the right to submit such
a question to the people, the court said, 50 *N. J. L.* at *p.* 603 :

"I am unable to find anything in the fundamental law or in reason,
which forbids the law-maker to bestow upon the people of the county
the right to exercise all powers of local government within the
county limits, to the exclusion . of all other political bodies, and
without changing the name from county to city. Hence, if all police
powers may be granted or delegated to the county, some may be
granted and others withheld; the greater includes the less. The
extent to which the delegation shall be made lies wholly within the
legislative discretion.

The true basis of the legislative right to delegate these powers
is, as I have said, in the fact that it has always been recognized
as a legitimate part of the legislative function, as well as a duty in
harmony with the spirit of our institutions, to enable the people,
in whom all power ultimately resides, to control the police powers
in communities for themselves. The expression of the legislative
will in due form, that the power shall be conferred, is, in itself,
a law. The legislature itself must grant the power, and it cannot
disable itself of the right to revoke it. It cannot delegate to the
voters of Mercer county the power to determine whether the city
of Newark or the city of Trenton, shall be endowed with the capacity

to govern its people. That question must be committed to the district within which the law is to operate."

and, 50 *N. J. L.* at *pages* 607 and 609 :

"The argument is that this law produces different results in different counties, dependent upon the vote for or against the sale of liquors, and that thus the legislature, by the indirect mode of submitting this matter to the popular vote, accomplishes what it could not do by direct legislation, viz., it makes the law in one county to differ from that in another. This is the same argument hereinbefore considered, presented in another form, against the validity of this law, viz., that this is not a law; that the legislature did not make the law; that the vote makes the law; and that the law varies with the vote. This error underlies this entire argument. It assumes what I have denied, that the law is not complete in itself. If a complete law when it left the hands of the legislature, it is general. It is the same law for all, and equally within the grasp of the people of each and every county to apply and enforce it at will. * * * The inhibition in the constitution is not intended to secure uniformity in the exercise of delegated police powers, but to forbid the passing of a law vesting in one town or county a power of local government not granted to another. If one town or county was excepted from the operation of this law, it would be special and local. Under it one county or town has neither greater or less power than every other, nor does such power differ in any respect. The authority granted is, in every aspect of it, the same; it may be exercised in a different way or the same way."

While it is true that the *Paul* case dealt with a liquor statute, and that the regulation of the liquor traffic has always been considered a subject by itself to the treatment of which all the analogies of the law appropriate to other subjects cannot be applied (*Paul v. Gloucester County, supra,* 50 *N. J. L.* at *page* 595; *Canada Dry Ginger Ale, Inc. v. F. & A. Distrib. Co.,* 28 *N. J.* 444, 454 (1958)), the statements of law in the case, and in *Hudspeth v. Swayze,* 85 *N. J. L.* 592 (*E. & A.* 1914), were not directed solely to the type of statute involved, but to referendum-type statutes generally.

In the statute before the court in *Hudspeth v. Swayze, supra,* the Legislature provided that before becoming effective

it should be submitted to the voters for approval. The court again critically examined the authorities on the subject and said, 85 *N. J. L.* at *page* 597: .

"True it is that the Constitution contains certain express limitations upon the powers of the Legislature, but among them is no prohibition against submitting to popular vote questions whether or not an act passed by the Legislature shall become operative.

Admittedly the chancellor-sheriff act is made to take effect upon a future day and upon the happening of a contingency. This in and of itself is unobjectionable. Pertinent cases in this state are *Paterson v. The Society*, 24 *N. J. L.* (4 *Zab.*) 385; *Paul v. Gloucester*, 50 *N. J. L.* (21 *Vroom*) 585; *Attorney-General v. McGuinness*, 78 *N. J. L.* (49 *Vroom*) 346; *In re Cleveland*, 51 *N. J. L.* (22 *Vroom*) 319, *S. C. on error*, 52 *N. J. L.* (23 *Vroom*) 188."

and, 85 *N. J. L.* at *page* 608:

"The cases in this state support, as constitutional, a referendum to the voters of towns upon the theory of submitting charter and police regulations to the corporators for acceptance or rejection, and we find *Paul v. Gloucester* to be the first case in which a referendum to the counties, as political subdivisions of the state, for the adoption or rejection of a legislative grant of police power was upheld. It is but another step to hold that, in 'the absence of any constitutional limitation, the Legislature may refer to the people in whom 'all political power is inherent' (*Const., art.* 1, *par.* 2), on a state-wide referendum vote, to say whether or not a certain act of the Legislature shall become operative and effective."

The 1947 *Constitution, Art.* 4, *Sec.* 1, *Par.* 1, provides that the legislative power shall vest in a Senate and General Assembly. An identical provision was contained in the 1844 *Constitution*, in effect when *Paul v. Gloucester County* and *Hudspeth v. Swayze*, both *supra*, were decided. Nothing is found in the present *Constitution* which precludes the Legislature from submitting the question to the people. Numerous referendum statutes are in effect in this State today. See, for example, *N. J. S. A.* 5:8-24 *et seq.*, the "Bingo Licensing Law," which is not operative until adopted by a majority of the voters in each municipality; *N. J. S. A.* 5:8-50 *et seq.*, the "Raffles Licensing Law," also inoperative

until approved by a majority of voters of the municipalities; *N. J. S. A.* 33:1–47, providing for municipal referendum on Sunday sales of alcoholic beverages; *R. S.* 40:22–7 and 40:22–8, providing a pay scale for county police officers but declaring that such scale shall remain inoperative until approved by the voters of the county; and most recently, *N. J. S. A.* 5:8–100 to 5:8–120, the "Amusement Game Licensing Law" (*L.* 1959, *c.* 109). Many other referendum provisions might be cited, but these serve to illustrate the diversity of subjects which have been submitted to referendum.

That the submitting of a law to the voters to determine whether they wish to be affected by it is not a delegation of legislative power to them is clearly set forth in *Hampton, Jr. & Co. v. United States*, 276 *U. S.* 394, 48 *S. Ct.* 348, 72 *L. Ed.* 624, 629 (1928), where the United States Supreme Court said:

"Congress may feel itself unable conveniently to determine exactly when its exercise of the legislative power should become effective, because dependent on future conditions, and it may leave the determination of such time to the decision of an executive, or, as often happens in matters of state legislation, it may be left to a popular vote of the residents of a district to be affected by the legislation. While in a sense one may say that such residents are exercising legislative power, it is not an exact statement, because the power has already been exercised legislatively by the body vested with that power under the Constitution, the condition of its legislation going into effect being made dependent by the Legislature on the expression of the voters of a certain district. As Judge Ranney of the Ohio Supreme Court, in *Cincinnati, W. & Z. R. Co. v. Clinton County*, 1 *Ohio St.* 77, 88, said in such a case:

'The true distinction, therefore, is, between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' * * *."

The argument is made that the statute is unconstitutional because acts which are now unlawful in 12 counties where the law has been approved are lawful in the other

9 counties. This argument is invalid for two reasons: first, under the statute in force prior to the 1959 act, all worldly employment or business on Sunday is prohibited; and secondly, discretionary power may be conferred which will occasion diversities between various localities. This was pointed out in *Noonan v. County of Hudson*, 52 *N. J. L.* 398, 402 (*E. & A.* 1890):

"The law confers a discretionary power upon localities which may occasion diversities by being exercised in one locality and not exercised in another. Such diversities are not inherent in the law. They arise, if at all, solely from the execution and non-execution of it, but the law prevails everywhere. A law which regulates the internal affairs of counties, or provides for the laying out, etc., of highways, based upon a valid classification, and which may be put in action alike by all of the class upon which it is based, is a general law. The constitution does not require that such a law shall be uniformly applied. * * *."

See also, the dissenting opinion of the late Justice Oliver Wendell Holmes (then of the Massachusetts Supreme Judicial Court) in *In re Municipal Suffrage to Women*, 160 *Mass.* 586, 36 *N. E.* 488, 491 (*Sup. Jud. Ct.* 1894).

Nor does such a statute offend the due process provisions of the Federal or State Constitutions, since the benefits conferred or the liabilities imposed are alike upon all citizens throughout the State, where on a county-wide basis the law has been made to apply to them. As was said in *Gundaker Central Motors v. Gassert, supra*, 23 *N. J.* at *page* 80, where the statute barring the sale of automobiles on Sunday was sought to be set aside:

"* * * Moreover, 'equal protection of the laws,' which demands that all persons similarly situated be dealt with alike, is accomplished by the avoidance of 'arbitrary discrimination between persons similarly circumstanced,' *Id.*, [*Schmidt v. Board of Adjustment*] 9 *N. J.*, [405] at *page* 418. Thus, legislation that treats all persons within a class reasonably selected for regulation in a like or even merely in a similar manner, satisfies the mandates of the State and Federal Constitutions, *Raymond v. Township Council of Teaneck*, 118 *N. J. L.* 109 (*E. & A.* 1937); *General Public Loan Corp. v. Director of Division of Taxation*, 13 *N. J.* 393 (1953);

*Guill v. Mayor and Council of City of Hoboken*, 21 N. J. 574 (1956). \* \* \*."

See also, *Guill v. Mayor and Council of City of Hoboken,* 21 N. J. 574, 582 (1956).

 Here, all persons similarly situated are treated alike. All may accept the benefits of the statute or reject them. The statute does not deprive any person of equal protection of the laws or the guarantee of due process and does not constitute an unlawful delegation of legislative power to the people.

## II.

It is next said that the classification of merchandise in the statute is arbitrary, capricious and, therefore, unlawful. Reference is again made to *Gundaker Central Motors v. Gassert, supra,* 23 N. J. at *pages* 81–82, where the Supreme Court disposed of a similar argument thus:

"The fact that the sale of motor vehicles is singled out for legislative treatment is no ground for complaint if there is any reasonable basis for such action, *Washington National Insurance Co. v. Board of Review,* 1 N. J. 545 (1949) ; *Jamouneau v. Harner,* 16 N. J. 500 (1954), *certiorari* denied 349 U. S. 904, 75 S. Ct. 580, 99 L. Ed. 1241 (1955) ; *Guill v. Mayor and Council of City of Hoboken, supra,* 21 N. J. 583 (1956). And there is reasonable basis if the buying and selling of motor vehicles on Sunday has effects inimical to the public good and welfare. Under the police power 'the State may protect its citizens from physical and moral debasement which comes from uninterrupted labor'; see *State v. Fair Lawn Service Center, Inc., supra,* 20 N. J. 468, 474, 483, (1956):"

 It may well be that the Legislature believed that the prohibiting of the sale of the specified merchandise was particularly or peculiarly necessary to the public good and welfare. The Legislature may recognize degrees of harm and hit the evil where it is most felt and, without violating equal protection, may limit its action and decide to proceed cautiously, step by step, because of practical exigencies, such as administrative convenience and expense, or because of

some substantial consideration of public policy or convenience or the service of the general welfare. *New Jersey Restaurant Assn. v. Holderman, supra,* 24 *N. J.* at *page* 300.

Nor should a statute be struck down because the legislative objective might be more fully achieved by another more expansive or inclusive classification. *Robson v. Rodriquez,* 26 *N. J.* 517, 524 (1958).

The Legislature has a large measure of discretion in selecting the means of accomplishing its goals. It "may make distinctions of degree having a rational basis; and they will be presumed to rest on that basis if there be any conceivable state of facts which would afford reasonable ground for its action." *Board of Health of Weehawken Tp. v. New York Central R. Co.,* 4 *N. J.* 293, 302 (1950). The affidavits filed in this case disclose facts justifying the legislative action. From the fact that only certain merchandise is proscribed, it may be inferred that the Legislature is taking the step-by-step approach to the problem, as approved in the *New Jersey Restaurant Assn.* case.

That a legislative classification not precise in its application does not constitute a violation of equal protection was held by the United States Supreme Court in *Purity Extract & T. Co. v. Lynch,* 226 *U. S.* 192, 33 *S. Ct.* 44, 57 *L. Ed.* 184 (1912), where the court said, at *page* 188:

"\* \* \* The statute establishes its own category. The question in this court is whether the legislature had power to establish it. The existence of this power, as the authorities we have cited abundantly demonstrate, is not to be denied simply because some innocent articles or transactions may be found within the proscribed class. The inquiry must be whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat."

See also, *New York Rapid Transit Corporation v. New York,* 303 *U. S.* 573, 58 *S. Ct.* 721, 82 *L. Ed.* 1024 (1938); *Bayside Fish Flour Co. v. Gentry,* 297 *U. S.* 422, 56 *S. Ct.* 513, 80 *L. Ed.* 772 (1936); *Radice v. New York,* 264 *U. S.* 292, 44 *S. Ct.* 325, 68 *L. Ed.* 690 (1924); *Schmidt v. Board of Adjustment, Newark, supra.*

It has also been said that, if a statute is reasonably appropriate in its overall approach, it should be upheld notwithstanding it may be invalid in special circumstances when it is apparent that the Legislature would want the act to prevail, where constitutionally it may. *Sayreville v. Pennsylvania R. R. Co.*, 26 *N. J.* 197, 200 (1958).

 Surely, this is the case here. Not only would the Legislature want the act to prevail in those counties where the voters have gone to the trouble and expense of placing it on the ballot and then acting favorably upon it, but the people themselves by their votes in 12 counties have clearly shown that they wish it to prevail. The fact that there may be problems of enforcement because some stores sell merchandise not specifically proscribed by the statute, as well as merchandise the sale of which is not penalized, provides no reason for holding the statute unconstitutional. As was pointed out above, the sale of all merchandise on Sunday is prohibited by another statute. The 1959 statute provides penalties only for the sale of the merchandise therein enumerated, but as to all other merchandise, except that specifically exempted under the provisions of *N. J. S.* 2A:171–2 and 2A:171–6, penalties for the sale of this can be provided by ordinances in the various municipalities, both in the counties which have approved *L.* 1959, *c.* 119, and in the others. If, after experience with the enforcement of this law, changes are indicated, they can be made by future Legislatures.

 With the wisdom of the exercise of the judgment of the Legislature, the courts have no concern, and, unless it clearly appears that the enactment has no substantial relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the Legislature, a notion foreign to our constitutional system. *Purity Extract & T. Co. v. Lynch, supra.*

Viewed in the light of the authorities cited, the classification of merchandise in *L.* 1959, *c.* 119 is not arbitrary, capricious or invalid.

## III.

Finally, we come to the argument that the referendum provision is illegal because it is arbitrary and discriminatory. It is said that the provisions of *section* 6 of *L.* 1959, *c.* 119, which require that the question be placed upon the ballot when a petition signed by not less than 2,500 registered voters in each county is filed, result in inequality in the various counties, in violation of the equal protection clauses of the federal and State constitutions. This argument is based upon the fact that the signatures of only one-half of 1% of the voters in Essex County were required to place the question on the ballot there, whereas in Sussex County the signatures of 10½% of the registered voters were needed. In 6 counties, the minimum number of signatures were not obtained and the question did not appear on the ballot on November 3rd last. This does not mean that the act will not ultimately apply to them because the voters in those counties may at the next general election secure the necessary signatures and place the question on the ballot then. The statute contains no limitation as to time. A time limitation might have been unconstitutional. See *Renner v. Holmes,* 68 *N. J. L.* 192 (*Sup. Ct.* 1902). Even in the 3 counties where at the last election the voters disapproved, the question can again be placed upon the ballot at the next general election upon the filing of a petition signed by 10% of the registered voters thereof (*section* 10). And, in those counties where the law was acted upon favorably, it may be resubmitted to the voters for further approval or disapproval by a petition signed by 10% of the registered voters (*section* 9).

Plaintiffs cite as authority for their argument on this point *Renner v. Holmes, supra,* and *State ex rel. Newell*

*v. Brown,* 162 *Ohio St.* 147, 122 *N. E. 2d* 105 *(Sup. Ct.* 1954). Neither case seems *apropos.* The *Renner* case dealt not only with the problem of time limitation in placing the question on the ballot, but the statute gave the board of freeholders, not the voters, the right to determine whether the question could be placed on the ballot. In the *Brown* case, a statute fixing the number of signatures of voters required upon petitions for nomination of independent candidates was held unconstitutional because it was not uniform throughout the State. Under the formula, in the most populous county a candidate needed to secure only 2,500 signatures in order to have his name placed on the ballot, whereas in the next four most populous counties candidates had to obtain from 12,900 to 23,500 signatures. This, the court held to be invalid.

The provision that a fixed number of voters may place a question on the ballot was upheld in this State in *Downs v. Boonton,* 99 *N. J. L.* 40 *(Sup. Ct.* 1923). There, the statute under attack provided that not less than 300 qualified voters of a county could by petition require the question of free public libraries to be placed upon the ballot. This was held to be a valid provision, the court citing as authority *Paul v. Gloucester County, supra,* and *Attorney-General v. McGuinness, supra.*

The requirement that 2,500 registered voters in each county sign a petition does not appear to be an unreasonable one, nor to discriminate invidiously against the least populous counties. It is said that in the original bill there was a provision for 10% of the registered voters. If this had been retained and become part of the law, the argument undoubtedly would be made that this was discriminatory because then 40,000 signatures would have been required in Essex County, which has in excess of 400,000 registered voters, and only 2,300 in Sussex County, where the voter registration is approximately 23,000. The provision of the statute is uniform in all counties and, in the absence of proof that the requirement is so unreasonably high as to

result in exempting certain counties from the operation of the act, there is no legal basis for attributing any desire on the part of the Legislature to act other than in the general public interest. *Gundaker Central Motors v. Gassert, supra,* 23 *N. J.* at *page 83.*

## IV.

I conclude, therefore, that *L.* 1959, *c.* 119 is not an unlawful delegation to the people of legislative power, that the classification of merchandise therein is not discriminatory nor capricious, and that the referendum provisions are valid. Plaintiffs' motion for summary judgment is denied, and defendant's motion for judgment on the pleadings, pursuant to *R. R.* 4:12–3, is granted, dismissing the complaint. The preliminary injunction will be dissolved.